Brandon Anthony ISBELL *v.* STATE of Arkansas

CR 96-517                                      931 S.W.2d 74

Supreme Court of Arkansas
Opinion delivered September 23, 1996

*Dennis R. Molock*, Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Brandon Anthony Isbell shot and killed Lois Wallace in the course of a robbery of a grocery store in Stuttgart. He was convicted in a jury trial of capital murder for causing the death of Ms. Wallace in furtherance of the robbery and under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1995). Mr. Isbell was sentenced to life imprisonment without parole. We affirm the judgment.

The murder occurred October 28, 1994, when Brandon Isbell was aged 14 years. The sufficiency of the evidence is not at issue, so we need not recite the facts in great detail. In a pretrial statement given to the police and again in his testimony at the trial, Mr. Isbell said he and two friends, Clint Lammers and Sean Smith, planned to rob the store to get money to run away from home. Clint Lammers had a .357 pistol. On the day of the crime they acquired a second weapon by taking a .22 pistol from the home of Mr. Isbell's grandmother. They walked to the grocery store and spoke of using the .22, which was the quieter of the two weapons, to shoot the grocery check-out clerk so she could not identify them. Mr. Isbell had fired the .22 pistol previously and knew that the double action did not work, so the hammer would have to be cocked to fire it. The three first purchased some batteries and then continued to mill about the grocery store. Mr. Isbell then approached Ms. Wallace, the store clerk, and pointed the .22 pistol at her head. The gun discharged, and Ms. Wallace went down. Mr. Isbell stood up on the

counter, attempting unsuccessfully to get the cash register open. They ran from the store, taking only the batteries, some cigarettes, and a pair of gloves. They went to Clint Lammers' home from which they phoned the police to turn themselves in. In relating the story to the police, Mr. Isbell said, "It didn't turn out like it does in the movies."

## 1. Admissibility of pretrial statement

In his first point of appeal, Mr. Isbell contends the Trial Court erred in overruling his motion to suppress his pretrial statement. When he was taken into custody, Mr. Isbell was questioned by a police officer after executing a waiver form indicating his knowledge and understanding of his rights and declining the assistance of counsel. Although his mother was present in the police station and had expressed her wish to speak with Mr. Isbell, she was not allowed to do so until the interrogation had been completed.

The officer who interrogated Mr. Isbell confirmed that he had told Mr. Isbell of his rights, including the right to an attorney, but the officer admitted at the suppression hearing that he did not give any extra explanation as he did not wish Mr. Isbell to have an attorney or parent present because that would have hindered the effort to obtain a confession.

Citing Ark. Code Ann. § 9-27-317, Mr. Isbell argues as follows:

> a waiver of the right to counsel shall be accepted only upon a finding by the court from clear and convincing evidence, after questioning the juvenile, that (1) the juvenile understands the full implications of the right to counsel; (2) the juvenile freely and voluntarily and intelligently wishes to waive the right to counsel; and (3) the parent ... for the juvenile has agreed with the juvenile's decision to waive the right to counsel.

The argument made in Mr. Isbell's brief to this Court is not that the State has failed to show that the waiver was involuntary or not intelligently made; rather, it is that Mr. Isbell was not given the benefit of the requirement that his parent enter an agreement to the execution of the waiver of the right to counsel.

Previously, § 9-27-317(f) provided that, "All waivers of the right to counsel shall be in writing and signed by the juvenile and

his parent, guardian, or custodian." The General Assembly removed the requirement that the parent sign by Acts 67, § 1, and 68, § 1, of the Second Extraordinary Session of 1994 which became effective August 26, 1994, some two months before Mr. Isbell's offense occurred. By amending the opening subsection of § 9-27-317, those same acts made it clear that its provisions, at least subsections (a) through (f), apply in "a delinquency or family in need of services hearing." Subsection (g)(2)(A) of the statute provides:

> No law enforcement officer shall question a juvenile who has been taken into custody for a delinquent act or criminal offense if the juvenile has indicated in any manner that he:
>
> (i) Does not wish to be questioned;
> (ii) Wishes to speak with a parent or guardian or to have a parent or guardian present; or
> (iii) Wishes to consult counsel before submitting to any questioning.

If the provisions of subsection (g) apply beyond the juvenile forum, they were not invoked here. There is no showing or argument that Mr. Isbell, when taken into custody, asked to consult with his parent. Mr. Isbell's argument on appeal includes a remark to the effect that the burden should not have been placed on a 14-year-old to ask to consult with his parent, but that is precisely where subsection (g) places it.

Our Rule 4-3(h) requires that we examine the transcript in a case in which there has been a sentence to death, life imprisonment, or life imprisonment without parole to determine any errors prejudicial to the appellant. Mr. Isbell's motion to suppress his confession was not limited to the failure to give him the protection of the Juvenile Code. Rather, it was couched in general terms as well, stating the confession was involuntary and not intelligently given.

When a person in police custody makes a statement after executing a waiver of rights, the law makes admissibility in evidence of the statement dependent upon a showing that the waiver was made voluntarily and intelligently. *Clay v. State,* 318 Ark. 122, 883 S.W.2d 822 (1994); *Piercefield v. State,* 316 Ark. 128, 871 S.W.2d 348 (1994). That requirement obtains regardless whether the person said to have executed the waiver is entitled to the protection of the Juvenile Code. In deciding whether we are convinced, according to

the totality of the circumstances, that a confession was voluntarily and intelligently given, we consider whether the special rights accorded to a juvenile by statute were observed by the authorities taking the statement. *Rouw v. State,* 265 Ark. 797, 581 S.W.2d 313 (1979).

Our conclusion on this point is that even if the confession should have been suppressed, the error was harmless beyond a reasonable doubt in view of the fact that Mr. Isbell testified at his trial and repeated every material aspect of his pretrial statement.

In *Fulminante v. Arizona,* 499 U.S. 279 (1991), the Supreme Court considered a case in which two pretrial confessions had been given. The first was found to have been coerced and thus not admissible. The issue was whether the error could be considered harmless and the conviction affirmed in view of the second confession. Although the reversal of the conviction by the Arizona Supreme Court was ultimately affirmed, the majority of the members of the Supreme Court applied a harmless-error analysis to the issue, holding that the error was not harmless.

In his trial testimony, essentially repeating his earlier confession, Mr. Isbell clearly admitted having committed every element of capital-felony murder. Unlike the facts in the *Fulminante* case (which need not be recited), there were no factors tending to make Mr. Isbell's second statement unreliable. No argument is made pursuant to *Michigan v. Long,* 463 U.S. 1062 (1983), that this Court should consider independent and adequate state grounds for holding that the error, if any, in admitting the first confession should be considered harmful *per se. See* Note, *Arizona v. Fulminante:* Should Arkansas Courts Apply Harmless Error Analysis to Coerced Confessions, 45 Ark. L. Rev. 995 (1983).

Certainly there was no argument presented to the Trial Court suggesting that Mr. Isbell was forced to testify because his earlier statement was admitted, nor is that argued here. We assume his testimony was given to emphasize his contention that he did not consciously pull the trigger and that the officer who testified about his pretrial statement was not being truthful when he pointed out that Mr. Isbell did not seem to be upset. Apparently the decision to testify and give a "judicial confession" was solely that of Mr. Isbell and his counsel.

## 2. Gunshot-residue testimony

The State presented the testimony of Gary Lawrence, of the Trace Evidence Section of the Arkansas State Crime Laboratory. Mr. Lawrence testified as an expert that a gunshot-residue kit containing a swab used to test Mr. Isbell showed gunshot residue on both Mr. Isbell's hands. Counsel objected to the testimony because the test had been administered without the use of control swabs, and Mr. Lawrence's report stated it was incomplete and thus its result severely jeopardized.

After hearing the arguments of counsel, the Trial Court correctly admitted the evidence, having concluded the objection would go to weight to be given to Mr. Lawrence's testimony rather than its admissibility. *Suggs* v. *State*, 322 Ark. 40, 907 S.W.2d 124 (1995); *Redman* v. *St. Louis S. W. Ry. Co.*, 316 Ark. 636, 873 S.W.2d 542 (1994). In view of our ruling on Mr. Isbell's statement, including his admission of having shot the victim, any error in admitting the gunshot-residue testimony would have been harmless.

## 3. Failure to provide witness statement

Jevon Butler, a friend of Mr. Isbell, testified about two conversations between them. The first conversation occurred prior to the commission of the crime. Information about that conversation was provided to the defense in the form of Mr. Butler's written statement given to the police on the day the crime occurred. Mr. Butler said Mr. Isbell and Mr. Lammers discussed with him their plan to commit crimes and run away. On the witness stand, he spoke of what "they," referring to Isbell and Lammers, told him. Counsel for Mr. Isbell objected, contending that any statement as to what Mr. Lammers had said was hearsay because Mr. Lammers was not present and testifying at the trial and thus subject to cross-examination. In response, the Prosecutor refined the questions to assure that the testimony related only statements made by Mr. Isbell. In effect, the objection was sustained.

Mr. Butler also testified about a conversation during a telephone call made to him by Mr. Isbell from jail. He said Mr. Isbell told him in that conversation that he had kicked Ms. Wallace in the head as her head lay on the counter after the shooting. The argument on appeal is that the State violated its obligation, provided in Ark. R. Crim. P. 19.7, to inform the defense about Mr. Butler's oral statement.

When the testimony was presented, counsel for the defense merely said "objection." The Prosecutor responded that he did not know of any basis for the objection other than that the defense did not want to hear the evidence. The Court said "overruled," and counsel did not mention a ground of objection or any authority for it. The Trial Court was thus not informed as to the nature of the objection. Absent a specific objection informing the Trial Court of the nature of the error alleged on appeal, we do not reverse. *Reams* v. *State,* 322 Ark. 336, 909 S.W.2d 324 (1995); *Childress* v. *State,* 322 Ark. 127, 907 S.W.2d 718 (1995).

### 4. Surprise rebuttal witness

After Mr. Isbell testified and the defense rested its case, the Prosecutor announced he wanted to present two witnesses of whose testimony he had learned the previous evening at the jail. Both were to testify about statements Mr. Isbell had made while in jail. The first witness was a police officer, and the Trial Court disallowed his testimony on the ground that the knowledge of the officer was imputed to the prosecution and should have been provided earlier to the defense.

The second witness was Fate Childress, an inmate in the jail. Defense Counsel objected on the ground that he could have been informed by the Prosecutor the night before or earlier in the trial about Mr. Childress's prospective testimony. The Prosecutor responded that he had assumed Mr. Isbell would not testify and that Mr. Childress was a rebuttal witness who would rebut Mr. Isbell's testimony about being "shaken" by the crime and sorry that it had happened. It would, he said, also rebut Mr. Isbell's statement that an investigator "lied" when he said Mr. Isbell did not seem to be upset about the crime on the day it occurred and he was taken into custody.

The objection was overruled, but court was recessed a short time to allow Defense Counsel to confer with the witness. When he returned to the courtroom, Defense Counsel renewed his objection. He pointed out that Mr. Childress would testify about what Mr. Isbell had said in the presence of Mr. Childress and seven or eight other prisoners and Defense Counsel could not possibly interview them all in the middle of the trial to learn what the other prisoners may have heard.

Mr. Childress testified (as abstracted, omitting record page

references):

> Mr. Isbell came in and was telling us about how he went in after the money. He said the bitch was moving too slow and after she got up to the counter he said I just pulled — shot her and let her know that I wasn't playing. He said you should have seen the glasses fly from her face. He acted like nothing had happened. He just said you know "The bitch deserved to die." All of us was standing around there, yes sir.

Obviously, the Rules of Criminal Procedure do not require the State to provide the defense with the names of rebuttal witnesses because until the defense case has been presented the State cannot know of witnesses needed for rebuttal. *Wainright v. State,* 302 Ark. 371, 790 S.W.2d 420 (1990); *Weaver v. State,* 290 Ark. 556, 720 S.W.2d 905 (1986). The argument here is that the State did not tell the defense about the oral statement of Mr. Isbell to Mr. Childress as it was required to do pursuant to Ark. R. Crim. P. 17.1(a)(ii) which requires disclosure by the prosecution to the defense of "any oral statements" made by the defendant. Although we have some doubt whether the Trial Court was informed of this argument with respect to Mr. Childress's statement, we will address the issue on its merits.

The only specific case authority cited on this point by Mr. Isbell is *Bennett v. State,* 297 Ark. 115, 759 S.W.2d 799 (1988), in which a ground upon which we reversed the conviction was the failure to disclose rebuttal testimony of which the Prosecutor purportedly learned only minutes before it was presented. There we referred to Ark. R. Crim. P. 19.2, which requires the prosecution to notify the court and opposing party of information discovered during the trial if disclosure of it is required by the Rules. In the *Bennett* case, no such disclosure was made, and the witness's testimony was a complete surprise to the Trial Court and to the defense. In this case there was disclosure, albeit later than the defense would have liked, in accordance with Rule 19.2, and the Trial Court was thus permitted to consider whether it was proper rebuttal or not.

If the prosecution had known during its case-in-chief of the evidence to be presented by Mr. Childress, it might properly have been presented then, but that does not mean the evidence was

not proper for rebuttal. In *Pyle* v. *State,* 314 Ark. 165, 862 S.W.2d 821 (1992), we said rebuttal evidence may overlap the State's case-in-chief. It must, however, be responsive to the defense evidence. In *Birchett* v. *State,* 289 Ark. 16, 708 S.W.2d 625 (1986), we disallowed evidence presented as rebuttal because the prosecution had elicited on cross-examination the evidence it then sought to rebut. We pointed out that it is within the Trial Court's discretion to decide the propriety of evidence offered in rebuttal. *See Jordan* v. *State,* 323 Ark. 628, 917 S.W.2d 164 (1996): *Caldwell* v. *State,* 322 Ark. 543, 910 S.W.2d 667 (1995). There was no abuse of discretion in this instance.

### 5. Judicial confession

In response to all four of the points argued by Mr. Isbell and discussed above, the State's brief responds only that there can be no prejudice resulting from any of the errors alleged in view of Mr. Isbell's "judicial confession." We agree, as noted above, that Mr. Isbell's testimony admitted every element of capital-felony murder. The only arguable exception might be a lack of evidence that he caused the death "under circumstances manifesting extreme indifference to the value of human life." That element is provided by the mere fact of pointing a loaded gun at the deceased in the course of a robbery, whether or not there was an intent to shoot. *See Davis* v. *State,* 325 Ark. 96, 925 S.W.2d 402 (1996).

The only case from this Court cited by the State for the proposition that the judicial confession cured the alleged errors is *Towe* v. *State,* 304 Ark. 239, 801 S.W.2d 42 (1990). In the *Towe* case we agreed, in an *obiter dictum,* with the decision of our Court of Appeals in *Pool* v. *State,* 29 Ark. App. 234, 780 S.W.2d 350 (1989). There the Court of Appeals declined an invitation to throw out a judicial confession on the ground that it had been induced by the presentation of physical evidence which should have been suppressed.

Beginning with *Hays* v. *State,* 268 Ark. 701, 597 S.W.2d 821 (Ark. App. 1980), in which it was said that evidence rules could be "relaxed" when a defendant had confessed in open court, our Court of Appeals has developed a line of cases dealing with the effect of judicial confessions. Perhaps the strongest statement came in *Barlow* v. *State,* 28 Ark. App. 21, 770 S.W.2d 186 (1989), in which it was said that "allegedly improper evidence was of no

consequence to the appellant and not prejudicial." That may be so when the evidence has to do solely with the elements of the crime and whether they were committed. In a case, however, where the evidence alleged to have been received in error may have further consequences, such as influencing the jury with respect to the sentence to be received, prejudice may occur.

While it may be said in the case now before us that there was no possibility of prejudice from, for example, the testimony of Mr. Childress as the jury imposed the lesser of the only two possible sentences, we remain unwilling to make a statement that a judicial confession universally cures trial error. We have thus addressed the merits of the issues even though the State declined to do so.

### 6. Other errors

As discussed earlier, the transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.

GLAZE, J., concurs solely because the errors submitted by appellant on appeal are harmless in view of his judicial confession during his case-in-chief.