Terrence D. BOX *v.* STATE of Arkansas

CA CR 00-802                                    45 S.W.3d 415

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 6, 2001

*James H. Phillips*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. A jury found Terrence D. Box guilty of aggravated robbery and battery in the first degree and sentenced him to a total of 420 months in the Arkansas Department of Correction ("ADC"). For reversal, appellant argues that (1) there was insufficient evidence to sustain his conviction and, accordingly, the trial court erred by denying his directed-verdict motion; (2) his right under the United States Constitution to a fair trial was violated because the trial court forced him to appear at trial and before the jury in his prison uniform; (3) the trial court violated the Arkansas Constitution by commenting on a critical piece of the State's evidence; and (4) the trial court erred by admitting into evidence a letter and envelope in violation of Ark.

R. Evid. 901-902. We agree with appellant on his second and last points, and, therefore, we reverse and remand.

The State filed a criminal information on May 25, 1999, alleging that on April 14, 1999, appellant, while armed with a .22 caliber rifle, robbed Geisla Cantrell and shot Tommy Cantrell. The matter proceeded to trial on November 16-17, 1999, when appellant, who was incarcerated at ADC, appeared before the court and jury in his prison uniform. Despite the fact that the matter had been raised, the trial court ordered appellant to stand for the jury trial while wearing his prison uniform, reasoning that it was appellant's responsibility to dress himself in civilian clothing. At trial, included among the witnesses that testified were Eli Hudson, who had been a suspect in the robbery, and Tommy Cantrell, who was one of the two victims.

Hudson gave incriminating testimony against appellant. According to Hudson, he was told "everything" concerning the robbery by Travell Lawson, his cousin and participant in the robbery, in appellant's presence; however, appellant did not deny his involvement. Following cross-examination by appellant's attorney, the trial judge inquired into the specifics of Lawson's conversation with Hudson. At that time, Hudson stated that in appellant's presence he was told by Lawson that while he was grabbing and trying to take Geisla Cantrell's purse, Tommy Cantrell appeared and was shot by appellant.

Tommy Cantrell, one of the two victims, testified regarding the events of the evening of April 14, and a letter dated November 3, 1999, that he purportedly received from appellant. Although the letter was unsigned, the envelope in which it was located had "correctional" stamped across it. Over appellant's authentication objection, the letter was admitted into evidence and read into the record by Cantrell. In the letter, appellant admitted to having a camera that was located in Geisla Cantrell's purse, but denied having anything to do with the robbery.

*I. Sufficiency of the evidence*

■■ In an effort to avoid potential double-jeopardy concerns on remand, we do not consider errors by the trial court until we first consider a challenge to the sufficiency of the evidence. *See Harris v. State*, 284 Ark. 247, 249-250, 681 S.W.2d 334, 335 (1984). On this point, appellant argues for reversal that the trial court erred

by denying his directed-verdict motion because there was insufficient evidence to sustain the conviction of aggravated robbery.[1] Our review is governed by the standard expressed in *Flowers v. State*, 342 Ark. 45, 48, 25 S.W.3d 422, 425 (2000) (citations omitted), which stated:

> A motion for a directed verdict is a challenge to the sufficiency of the evidence. The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict.

The trial court denied appellant's directed-verdict motion, reasoning that Hudson's testimony presented a valid jury question of whether appellant had admitted to committing the crime. We agree with the trial court.

Rule 801(d)(2)(ii) of the Arkansas Rules of Evidence provides that "a statement of which [a party] has manifested his adoption or belief in its truth . . ." constitutes nonhearsay. "[T]he admissibility is tested by whether a reasonable person, under the circumstances, would have been expected to deny the statements if they were in fact untrue." *Morris v. State*, 302 Ark. 532, 537, 792 S.W.2d 288, 291 (1990). Here, Hudson testified that he was told by Lawson that appellant was involved in the robbery and shot Tommy Cantrell. Despite the fact that this story was told in appellant's presence, he did not deny the truthfulness of the story.

Pursuant to Ark. Code Ann. § 5-12-103 (Repl. 1997):

> (a)  A person commits aggravated robbery if he commits robbery as defined in § 5-12-102, and he:
> (1)  Is armed with a deadly weapon or represented by word or conduct that he is so armed; or
> (2)  Inflicts or attempts to inflict death or serious physical injury upon another person.

---

[1] According to the abstract, the direct-verdict motions pertained only to the aggravated robbery charge and, therefore, we only consider whether there was sufficient evidence to sustain that charge. *E.g., Hutts v. State*, 342 Ark. 278, 278-280, 28 S.W.3d 265, 267 (2000).

Furthermore, a person commits robbery as defined in Ark. Code Ann. § 5-12-102 (Repl. 1997), "if, with the purpose of committing a felony or misdemeanor theft . . . he employs or threatens to immediately employ physical force upon another."

■ In light of these matters, we conclude that Hudson's testimony presented a valid jury question as to whether appellant had committed aggravated robbery. Viewing the evidence in a light most favorable to appellee, the proof suggests that appellant used a deadly weapon and attempted to cause either death or serious physical harm while also trying to commit a theft. Accordingly, we affirm the trial court's denial of appellant's directed-verdict motion.

## II. Fair trial

For his next argument, appellant contends that his Fourteenth Amendment right to a fair trial was violated because the trial court ordered that he stand trial while wearing his ADC uniform. As we review this matter, we are mindful that:

> ■■ The responsibility of striving for an atmosphere of impartiality during the course of a trial rests upon the trial judge. . . . Even though the trial judge runs the court, the right of an accused to a fair trial, although not perfect, is paramount. If the exercise of discretion results in the denial of a fair trial to a defendant, the discretion is certainly abused.

75 AM. JUR. 2D *Trial* § 193 (1991). Furthermore, as the United States Supreme Court stated in *Estelle v. Williams*, 425 U.S. 501, 503 (1976), "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." Despite the fact that this critical term is left undefined by our United States Constitution, we consider the term "fair trial" to consist of the following:

> A fair trial is a legal trial; one conducted according to the rules of common law except in so far as it has been changed by statute; one where the accused's legal rights are safeguarded and respected. A fair trial is a proceeding which hears before it condemns, which proceeds on inquiry, and renders judgment only after trial. A fair trial is that which is such in contemplation of law, namely, that which the law secures to the party, and a fair trial before an impartial jury means one where the jurors are entirely indifferent between the parties. The necessary factors in a fair trial are an adequate hearing and an impartial tribunal, free from any interest,

bias, or prejudice. A fair trial is only likely to accomplish full justice within human limitations.

88 C.J.S. *Trial* § 1 (1955). Accordingly, on review we must determine whether the trial court's order requiring appellant to stand trial in his prison uniform constituted an abuse of discretion inasmuch as it denied appellant a fair trial. For the reasons expressed below, we conclude that the lower court's actions constituted such an abuse.

■ It is well settled that under the Fourteenth Amendment, a State cannot "compel an accused to stand trial before a jury while dressed in identifiable prison clothing . . . ." *Estelle*, 425 U.S. at 512. Such a prohibition is necessary because, although not stated in the Constitution, a defendant is presumed innocent, and "an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system." *Estelle*, 425 U.S. at 503-504. However, " '[a] defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error.' " *Estelle*, 425 U.S. at 508 (quoting *Hernandez v. Beto*, 443 F.2d 634, 637 (5th Cir. 1971)). Accordingly, to determine whether appellant was denied a fair trial in this matter, we must conclude whether there is anything in the record on appeal that "warrants a conclusion that [appellant] was compelled to stand trial in jail garb or that there was sufficient reason to excuse the failure to raise the issue before trial." *Estelle*, 425 U.S. at 512.

We conclude that the abstract plainly reveals that the issue was sufficiently brought to the trial court's attention and that appellant was made to stand trial in his ADC uniform. Prior to the beginning of the trial, the State alerted the trial judge to the fact that appellant was wearing his ADC uniform, and appellant, thereafter, also raised the issue to the trial judge. Nonetheless, the trial judge ordered appellant to stand trial while wearing his prison uniform.

The relevant colloquy was as follows:

> PROSECUTOR: The defendant has been brought in his prison whites.
>
> COURT: I instructed the sheriff to bring him in that way.
>
> PROSECUTOR: Oh, okay.

COURT: And the reason I did this — I'll rule for the record later on when [appellant's attorney] makes his record, but he was instructed and had a chance to dress unless otherwise, and I think that's his responsibility, and he had the opportunity. We'll make a record later.

DEFENSE: I do have two motions to present to the court when you are ready.

COURT: We will proceed with jury selection. You will get the opportunity to make those later. . . .

*[following jury selection]*

DEFENSE: My second motion is that [appellant] is present in his jail garb. . . . Anybody seeing [appellant] here today in ADC garb should understand that he has a prior conviction. That, alone, is prejudicial . . . .

COURT: Do you want me to ask the jury about?

DEFENSE: I think that would almost be an inference of guilt right here, your honor.

COURT: Do you want me to ask the jury about it, yes or no?

DEFENSE: No, I think that would be even more highly prejudicial.

COURT: Here's the situation the court is in. Before [appellant] was brought up the stairs, I asked his attorney if he had discussed this matter with [appellant] about wearing civilian clothes, if they were available. He said he had. [Appellant] showed up from the regional jail without any. None had been supplied over at the sheriff's office for him to change into. He's been given that opportunity. It's [appellant's] obligation, in my opinion, to have those available, unless it's impossible. It has not been shown to have been impossible. I could have delayed this matter, but I do not think I'm required to delay this matter to search down and hunt for [appellant] some clothes that he wants to wear. That is not the Court's obligation, and the motion is denied. . . .

DEFENSE: He was not arrested in the garb he's wearing today. Somewhere there is civilian clothing available that he has been locked up and arrested in . . . .

COURT: It has not been shown that those are unavailable. . . . I have an obligation to move his case along, and that's what I'm trying to do.

We hold that this action constituted reversible error inasmuch as it ordered appellant to stand trial in his prison uniform after all the parties had raised the issue and appellant specifically made it known to the trial court that he did not want to proceed while wearing prison clothes. Such an order, in our view, denied appellant a fair trial because it deprived him of the opportunity to defend the case against him in an environment that was reasonably free of any interest, bias, or prejudice. To hold otherwise would require that we also conclude that a reasonable jury would, after seeing appellant in his prison uniform, be indifferent to his case, which, for the reasons expressed in *Estelle*, we will not do. More importantly, however, we conclude that such an order violated the Fourteenth Amendment because it compelled appellant to stand trial while wearing prison garb, and, therefore, denied appellant a fair trial.

We specifically disagree with appellee's argument that appellant is entitled to no relief on appeal because he failed to ask the trial court for a mistrial. Such an argument fails to recognize that it is the trial judge who ordered appellant to stand trial in his prison garb. However, assuming, *arguendo*, that appellee's argument has merit, we conclude that, commensurate with *Estelle*, there was sufficient reason to excuse such an omission in light of the trial judge's pre-motion comments that he was going to require appellant to stand trial in his prison garb and his plainly stating that appellant's motion was "denied" after appellant expressed his desire to the trial court that he did not want to be tried in prison garb. Furthermore, the denied motion established the trial court's view that no misconduct had occurred, and it is unnecessary to request further relief in order to preserve the issue for appellate review. *See Leaks v. State*, 339 Ark. 348, 355-356, 5 S.W.3d 448, 453 (1999). In any event, whether viewed as either an appeal of the trial court's order or an omission for which there is sufficient excuse, we conclude on review that the trial court's actions constituted an abuse of discretion and reverse on this issue.

### III. Trial judge's comments

We, however, affirm on appellant's next point on appeal concerning the trial judge's questioning of Hudson. Appellant

argues that the trial court's actions constituted a violation of Ark. Const. art. 7, § 23, which provides that "[j]udges shall not charge juries with regard to matters of fact, but shall declare the law, and in jury trial shall reduce their charge or instructions to writing on the request of either party." While we have cautioned trial judges not to assume the role of an advocate when they question witnesses,[2] in this case we are simply unable to engage in any meaningful appellate review because there was no objection to the trial judge's actions in this regard. *E.g., Jones v. State*, 340 Ark. 390, 397, 10 S.W.3d 449, 453 (2000) ("We have frequently held that a contemporaneous objection must be made to the trial court before we will review an alleged error on appeal.").

*IV. Admission of letter*

For his final point on appeal, appellant argues that the trial court erred by admitting into evidence the letter that was purportedly from appellant to Mr. Cantrell. Specifically, appellant argues that appellee failed to properly authenticate the letter because the foundation that was laid was not "sufficient to support a finding that the matter in question [was] what its proponent claim[ed]." Ark. R. Evid. 901(a). To prevail, however, appellant must demonstrate that the trial court abused its discretion by determining that the proffered evidence satisfied the Rule 901 requirements. *E.g., Monk v. State*, 320 Ark. 189, 198, 895 S.W.2d 904, 909 (1995). We find that appellant has met that burden.

The authentication of a letter is subject to Ark. R. Evid. 901(a), and as such:

> [A] letter alleged to have been received from a particular source ordinarily is not admissible until its authenticity and genuineness have been sufficiently shown. There must be sufficient proof that the letter was written by the person by whom it purports and is claimed to have been written, or under the authority of the person claimed to have authorized it.

---

[2] We stated in *Oliver v. State*, 268 Ark. 579, 590, 594 S.W.2d 261, 266 (Ark. App. 1980), that:

> While a trial judge is not a mere umpire and may interrogate witnesses in an action before him, he may not act in a dual capacity as judge and advocate. The two roles are not concentric. The presentation of a litigant's case in an adversary proceeding should be left to the initiative of counsel who has the responsibility to represent the interest of his client.

32A C.J.S. *Evidence* § 982(a) (1996). In the case at bar, we conclude that the documentary evidence offered lacked a reasonable certainty of genuineness and authenticity.

■ At issue is an envelope on which purportedly appeared appellant's return address and the word "correctional" and which contained an unsigned letter that stated it was from appellant. The letter lacked appellant's signature, the State failed to offer any evidence to prove that the letter was in appellant's handwriting, and there was no evidence that it was improbable that the letter was authored and sent by anyone other than appellant. We are unable to conclude that appellee provided sufficient proof that the document was a letter from appellant to Mr. Cantrell, and, therefore, we hold that the trial court abused its discretion.

Furthermore, while it is true, as stated in the dissenting opinion, that in appellant's case-in-chief a witness testified to many of the factual elements that were admitted into evidence *via* the letter, we are unpersuaded that this has the effect of waiving his objection to the admission of the letter for purposes of appellate review.[3] Under the dissenting opinion, for appellant to preserve his objection on appeal he would have to forego the presentation of a trial defense designed to respond to the evidence offered by the State over appellant's objection.[4]

---

[3] We agree with the dissent's position that the admission of incompetent evidence constitutes harmless error when said evidence is cumulative; however, we disagree that the evidence here was cumulative. Evidence is cumulative if and only if it is "[a]dditional evidence of the same character as existing evidence and that supports a fact established by the existing evidence . . . ." *Black's Law Dictionary* 577 (7th ed. 1999). The dissent focuses on the testimony of appellant's witness to reach the conclusion that the letter, which was offered during appellee's case-in-chief, was cumulative. In our view, that approaches the question from the wrong direction. The issue is whether the *letter* was cumulative evidence, and it is plain that the letter was not additional evidence that was of the same character as it existed at that stage of the trial.

[4] The authorities relied upon by the dissent to conclude otherwise comprise either *obiter dictum* or are plainly distinguishable from the case at bar. *See Stephens v. State*, 328 Ark. 81, 941 S.W.2d 411 (1997) (affirming admission of testimonial evidence because appellant failed to properly object, not simply because evidence might have been cumulative); *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996) (affirming admission of defendant's pre-trial confession; accordingly, the confession could not be considered cumulative inasmuch as it was not evidence in addition to the existing evidence at trial); *Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995) (affirming denial of motion for mistrial because appellant failed to see that trial judge gave cautionary instruction, not simply because evidence might have been cumulative); *Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995) (affirming admission of testimonial evidence when others testified during State's case-in-chief without objection to materially same evidence, not merely because defendant admitted to same); *Cage v. State*, 73 Ark. 484, 84 S.W. 631 (1905) (affirming admission of testimonial evidence that was given *after*

It is true that the general rule is that "[i]f a party who has objected to evidence of a certain fact himself produces evidence from his own witness of the same fact, he has waived his objection." 1 John W. Strong, *McCormick on Evidence* § 55, at 246 (5th ed. 1999). Here, however, it is plain that appellant did not attempt to produce the letter from his own witness. While it may be tempting to simply conclude that there was no material difference between the contents of the letter and the testimony of appellant's witness, to do so would simply be untrue. The letter contained information that was different from the material that was offered into evidence *via* appellant's witness, and this witness testified to matters that were different from the material that was offered into evidence *via* the letter. We cannot assume that the jury found these differences immaterial.[5] Accordingly, it would be incorrect to hold that the letter and the testimony constituted, as a matter of law, the same evidence.

If appellant's witness had testified prior to the admission of the letter, then he could be in a different position inasmuch as he would not be compelled to reintroduce the evidence in a light more favorable to his theory of the case. The conclusion reached by the dissenting opinion would, in our view, unduly place defendants in an unjust dilemma — one can present either a zealous trial defense or a zealous appellate defense, but not both. We respectfully disagree with the view that the law places litigants in such an untenable position.

Reversed and remanded.

GRIFFEN, VAUGHT, and BAKER, JJ., agree.

PITTMAN and CRABTREE, JJ., concur in part and dissent in part.

---

testimony given during defendant's case-in-chief on direct examination); *McDonald v. State*, 37 Ark. App. 61, 824 S.W.2d 396 (1992) (affirming admission of testimonial evidence because court held permissible to do so under Ark. R. Evid. 404(b), not simply because evidence might have been cumulative); *Brown v. State*, 5 Ark. App. 181, 636 S.W.2d 286 (1982) (affirming admission of testimonial evidence because said evidence concerned a matter that was not at issue, not simply because evidence might have been cumulative).

[5] This stands in stark contrast to *Aaron v. State*, 300 Ark. 13, 775 S.W.2d 894 (1989), which is relied upon by the dissent, wherein the difference was between an I.D. card and a driver's license. In our view, there would in all likelihood be no difference between an I.D. card and a driver's license. However, the jury may have found material differences between a letter that was allegedly written by an inmate in a correctional facility and testimony that a person sold a camera to the defendant. To reach a contrary conclusion would require that we speculate on what the jury found valuable in the admitted evidence, which we cannot do.

J OHN MAUZY PITTMAN, Judge, concurring in part; dissenting in part. I disagree with those parts of the majority opinion that find reversible error and remand this case for a new trial.

With respect to the prison-garb issue, I first think that appellant failed to preserve for appeal the argument that the trial court should have granted a mistrial. While appellant's counsel prefaced his remarks to the trial court on this issue by stating that he had a "motion" to present, he made no request for a mistrial or any other specific form of relief. Generally, when an appellant does not request a mistrial, he cannot argue on appeal that the trial court's failure to grant one constitutes reversible error. *See Rankin v. State,* 329 Ark. 379, 948 S.W.2d 397 (1997). While the majority states that any such failure by appellant was excused by the trial court's comments, I note that our supreme court recently held, in effect, that a trial court's statement indicating that it clearly understands and refuses an appellant's request for relief will not suffice to preserve the issue for appeal where the request itself is not clear from a reading of the record. *See Bearden v. Arkansas Dep't of Human Servs.,* 344 Ark. 317, 325-27, 42 S.W.3d 397, 402-3 (2001).

Even had appellant's motion been sufficient to constitute a mistrial motion, however, I still could not agree that its denial amounts to reversible error. I have no particular quarrel with the majority's abstract statements of substantive law on this point. However, I have considerable difficulty with the conclusion that the trial court compelled this appellant to appear in prison garb. While a trial court is not to compel a defendant to stand trial before a jury in identifiable prison clothing, I firmly believe that the right not to be so attired can be waived by failure to make a timely objection or request for assistance. *See Estelle v. Williams,* 425 U.S. 501 (1976); *Young v. State,* 283 Ark. 435, 678 S.W.2d 329 (1984). Here, both appellant's argument on appeal and the timing of his attempt to make his "mistrial" motion below (*i.e.,* soon after appellant's arrival in the courtroom) indicate that he believes that the damage was complete upon his being seen by the jury venire when he was first brought into the courtroom.[1] However, I find nothing in the abstract to indicate that the trial court was ever asked, prior to appellant's appearance before the jury venire the day of trial, to assist in securing clothing for appellant to wear at trial. According to appellant's counsel, appellant had made arrangements well before

---

[1] The majority opinion fails to point out that appellant was allowed to change as soon as his parents arrived at the courthouse with his civilian clothes, and that this occurred before jury selection was complete.

trial for his parents to bring clothes for him to wear at his trial. Nor do I find anything to indicate that, when appellant's parents were delayed in getting to the courthouse, the court was asked to continue the proceedings prior to appellant's being brought into the courtroom. Clearly, the trial court had no duty to make any inquiry. *Young v. State, supra*. Rather, the duty was on appellant's counsel to make the problem and his client's desires known to the court in time for the damage to be avoided. In short, I do not see the "compulsion" on the part of the trial court that is required for a reversal.

I also disagree with the majority's conclusion that admission of the letter constituted prejudicial error. Assuming, for the sake of argument, that the trial court erred in finding that the letter was sufficiently authenticated, I fail to see how appellant can now claim that he suffered any prejudice as a result of its admission.

As the majority states, appellant was tried for and convicted of aggravated robbery and first-degree battery. One of the items stolen during the crimes was a camera. The letter in question was addressed to one of the victims, identified the writer as appellant, and denied that he committed the crimes. The letter further stated that the writer had possessed a camera but maintained that he obtained it by purchasing it from Phillip Gober. Later, during appellant's case-in-chief, appellant called Phillip Gober as a witness. On direct examination, appellant's counsel elicited testimony from Mr. Gober that he found a camera in an alley, met appellant on the street while walking home, and sold the camera to appellant for $35.00.

The only way in which appellant could have been prejudiced by the introduction of the letter is that it could be read as an admission that he possessed a piece of property that had been stolen from the victim. However, appellant called a defense witness who testified on direct examination to the very same information contained in the letter.[2] The law is well settled that prejudice is not presumed, and we will not reverse absent a showing of prejudice. *Donovan v. State*, 71 Ark. App. 226, 32 S.W.3d 1 (2000); *Camp v. State*, 66 Ark. App. 134, 991 S.W.2d 611 (1999). It is also clear that evidence that is merely cumulative of other evidence admitted

---

[2] This proof was in addition to evidence of appellant's adoptive admission of his participation in the crimes, proof that the victim's camera was found by the police at the apartment "shared by" appellant and his girlfriend, and proof that appellant's girlfriend denied that the camera was hers.

without objection is not prejudicial. *Griffin v. State,* 322 Ark. 206, 909 S.W.2d 625 (1995); *Brown v. State,* 66 Ark. App. 215, 991 S.W.2d 137 (1999); *Camp v. State, supra.* Additionally, as the majority concedes, "If a party who has objected to evidence of a fact himself produces evidence from his own witness of the same fact, he has waived his objection." 1 JOHN W. STRONG, McCORMICK ON EVIDENCE § 55, at 246 (5th ed. 1999); *see Aaron v. State,* 300 Ark. 13, 775 S.W.2d 894 (1989); *McDonald v. State,* 37 Ark. App. 61, 824 S.W.2d 396 (1992).

The majority argues that, because the letter was introduced first, appellant then had free rein to repeat the evidence before the jury and still retain the right to complain about the letter's admission on appeal. Nothing is cited for this proposition, and it is not the law. *See, e.g., Stephens v. State,* 328 Ark. 81, 89, 941 S.W.2d 411, 415 (1997) (State's witness's testimony not prejudicial because it was cumulative of appellant's own, later testimony); *Griffin v. State,* 322 Ark. 206, 217, 909 S.W.2d 625, 631 (1995) (appellant suffered no prejudice from State's witness's mention of appellant's crack cocaine purchase because later, during appellant's case-in-chief, he testified that he had visited a "dope house" and smoked crack cocaine); *Aaron v. State,* 300 Ark. 13, 15, 775 S.W.2d 894, 895 (1989) (appellant waived his objection to a State's witness's testimony about information contained on appellant's driver's license when appellant later introduced an "I.D. card" containing the same information); *McDonald v. State,* 37 Ark. App. 61, 66–67, 824 S.W.2d 396, 400 (1992) (appellant waived any objection he may have had regarding the State's evidence about a planned drug transaction between appellant and a third person when appellant later introduced the transcript of a witness's testimony at an earlier trial, which contained references to the planned drug transaction); *Brown v. State,* 5 Ark. App. 181, 189, 636 S.W.2d 286, 290 (1982) (no reversible error in admitting sheriff's testimony because it was cumulative to testimony of others, *including the appellants*); *cf. Cage v. State,* 73 Ark. 484, 485, 84 S.W. 631, 632 (1905) ("[Appellant] certainly had no right to object to that which the witness testified at [appellant's] instance").[3] Our supreme court has found errors not prejudicial on account of subsequent repetition of the challenged information even where, unlike in the case now before us, the error complained of is of constitutional dimension, which requires that

---

[3] I trust that the reader will note the different introductory signal preceding the *Cage* citation and the parenthetical following it, and will realize that it is not being cited as presenting facts like the other referenced cases but is cited for the statement appearing in the parenthetical.

the error be "harmless beyond a reasonable doubt." *See, e.g., Isbell v. State,* 326 Ark. 17, 22, 931 S.W.2d 74, 77 (1996) (admission of allegedly illegally obtained confession "was harmless beyond a reasonable doubt in view of the fact that [appellant] testified at his trial and repeated every material aspect of his pretrial statement"); *Schalski v. State,* 322 Ark. 63, 69-70, 907 S.W.2d 693, 697 (1995) (evidence of police officer's observations and photographs of appellant's truck, obtained as a result of an allegedly illegal search in violation of appellant's Fourth Amendment rights, was cumulative, and its admission was harmless beyond a reasonable doubt given that a description of appellant's truck and its contents was admitted at trial through several other witnesses, *including appellant himself*). I can only conclude that appellant waived his objection to, and in any event suffered no prejudice from, admission of the letter in light of his own witness's cumulative testimony.[4]

The majority also mentions that appellant was somehow "compelled to reintroduce the evidence in a light more favorable to his theory of the case." However, appellant made no argument, either at trial or on appeal, that he was forced to have his witness repeat the evidence because the letter was admitted, and this court cannot assume that he was so compelled. *See Isbell v. State,* 326 Ark. at 22, 931 S.W.2d at 77-78. Moreover, the witness's testimony was in no way more favorable to his theory of the case. Mr. Gober's

---

[4] The majority states in its footnote 3 that evidence is cumulative "if and only if" it is in addition to evidence that has previously been admitted. *Black's Law Dictionary* is cited for the timing aspect of the word's definition; the "if and only if" language is added by the majority without any citation. Nevertheless, however instructive the dictionary may be in certain situations, it does not control over a contrary view held by the highest court in this state on a matter of state law. And it is quite clear that the Arkansas Supreme Court determines whether objected-to evidence is "cumulative" to other evidence admitted without objection *by reference to the state of the record at the close of the case* and not at the time that the objectionable evidence was introduced. In other words, evidence admitted over objection most certainly can be rendered "cumulative" and non-prejudicial by other, *later* evidence of the fact admitted without objection. *Schalski, Stephens, Griffin,* and *Brown* all use the word "cumulative" in this very way.

In any event, the point involved here is the legal principle, not the correct use of a single word. The principle is that one cannot simply repeat the substance of objectionable evidence and continue to maintain that admission of the objectionable evidence unfairly prejudiced his case, whether because he has waived his earlier objection or because he has, in the end, suffered no prejudice. All of the cases cited in the textual paragraph above (except *Cage,* see footnote 3, *supra*) stand for this principle.

The majority also attempts to distinguish some of the cases that I have cited by pointing out additional reasons why no prejudicial error was found in those cases. Of course, that is a distinction without a difference inasmuch as the point for which I have cited the cases was stated in each of them as a separate, independent reason why any error was not prejudicial.

testimony was not responsive to the contents of the letter in terms of explaining or rebutting them; his testimony was, in substance, nothing other than a simple repetition of the letter's contents. Even appellant admits in his brief that Mr. Gober's testimony "tracks with what the 'jail letter' says happened."[5] I would affirm appellant's convictions.

CRABTREE, J., joins in this opinion.

---

[5] To the extent that the majority refers to, without reciting, matters in the letter that the majority believes were "different" from those in the witness's testimony and *vice versa*, two things bear repeating: (1) neither the letter nor the witness's testimony contained anything of a material nature that the other did not contain; moreover, whether the witness's testimony contained additional information not in the letter is immaterial (at least where his testimony did not serve to rebut or explain away the contents of the letter) because he was appellant's witness and testified without objection; and (2) in any event, the only way in which appellant could have been prejudiced by the letter was its admission that the writer possessed a camera that may have been stolen from the victim, and appellant does not contend otherwise; appellant is not concerned about any other matters in the letter, and the majority should not be making arguments for him.

The next-to-last paragraph and last footnote of the majority opinion also say that the letter and Mr. Gober's testimony are not the "same evidence" because they take different forms and, therefore, that one cannot be cumulative to the other and that appellant's introduction of the one cannot constitute a waiver of his objection to the other. The only reason given for their position that the two items of evidence are materially different seems to be that one is a letter written by one person while the other is live testimony of another person. However, even the quotation from MCCORMICK ON EVIDENCE, *supra,* which is cited by the majority, makes it clear that a waiver results from introduction of *evidence of the same fact,* without regard to the *form* that the repetition of the evidence may take. Of course, it is the substance of the evidence that matters. Moreover, here, the repetition of the objected-to evidence came from appellant's own witness on direct examination; to say that its character makes it less convincing than an unsigned letter containing evidence of the same fact would border on the absurd. Finally, it bears mentioning that the supreme court has applied the principle that I am advocating despite the fact that the repetition of the objectionable evidence has taken a different form than that in which the proof was originally offered. See *Schalski v. State,* supra (photographs and testimony); *Aaron v. State, supra* (a driver's license and an I.D. card).