2009 Ark. App. 431

**Michael Spiro CORA, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–633.**

Court of Appeals of Arkansas.

May 27, 2009.

Dyer and Jones, by: F. Parker Jones III, Benton, for appellant.

Dustin McDaniel, Att'y Gen., by: Deborah Nolan Gore, Ass't Att'y Gen., for appellee.

M. MICHAEL KINARD, Judge.

Appellant, Michael Spiro Cora, appeals from his conviction on a charge of theft of property lost, mislaid, or mistakenly delivered. On appeal, appellant argues that the trial court erred in denying his motions for directed verdict. We affirm.

During the relevant time period, appellant was the sole owner of a business known as Michael Cora Marine & ATV, Inc. Audie Prewitt testified that he purchased a boat from Cora Marine in August 2005. Prewitt initially arranged to have approximately $40,000 of the purchase price financed through Riverland Credit Union. When the loan proceeds were not processed when promised, Prewitt contacted Riverland. He was informed that Hurricane Katrina had done extensive damage to Riverland's main New Orleans branch. Prewitt was advised by Riverland to procure alternate financing. Prewitt arranged financing through Simmons First National Bank and tendered payment to Cora Marine. Prewitt testified that, after he arranged financing with Simmons, he advised appellant not to accept payment from Riverland.

After payment was made to Cora Marine by Prewitt, Riverland mistakenly sent a check to Mike Cora Marine & ATV, Inc., which was deposited into the business's account and used to pay expenses, according to the testimony of appellant. Appellant testified that the check was deposited by his assistant, and that he was personally not aware of the double payment until he was notified by Prewitt. After appellant was notified of the double payment, he issued a check to Prewitt for the amount mistakenly paid by Riverland. Before Prewitt could deposit the check, appellant stopped payment on the check. Appellant testified that he did not know whether he had sufficient funds to cover the check in the account and that an attorney he had consulted regarding business matters had advised him to pay Riverland directly, instead of Prewitt. In March of 2006, both appellant and Mike Cora Marine & ATV, Inc. filed for bankruptcy protection. Ap-

pellant testified that, after Prewitt and his spouse later filed a civil action against him, he offered to repay the overpayment in monthly installments, which the Prewitts refused. No additional evidence of any efforts by appellant to repay the overpayment was presented. Following the trial, the trial court, sitting without a jury, found appellant guilty of theft of property. Appellant was sentenced to six years' probation, with three years supervised and three years unsupervised. Appellant was also ordered to pay restitution to the Prewitts' account at Riverland.

Appellant's first point on appeal is that the trial court erred in denying his motions for directed verdict. Because this was a bench trial, appellant's motions for directed verdict were in reality motions to dismiss. *Stewart v. State*, 362 Ark. 400, 208 S.W.3d 768 (2005). A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is considered a challenge to the sufficiency of the evidence. *Tomboli v. State*, 100 Ark.App. 355, 268 S.W.3d 918 (2007). We will affirm a trial court's denial of the motion if there is substantial evidence, either direct or circumstantial, to support the verdict. *Id.* Substantial evidence is defined as evidence forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Id.* The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict is considered. *Id.*

Appellant was charged with and found guilty of theft of property in violation of Arkansas Code Annotated section 5–36–105 (Repl.2005). Pursuant to section 5–36–105, a person commits theft of property lost, mislaid, or delivered by mistake if the person (1) comes into control of property of another person; (2) retains or disposes of the property when the person knows the property to have been lost, mislaid, or delivered under a mistake as to the identity of the recipient, or as to the nature or amount of the property; and (3) with the purpose of depriving any person having an interest in the property, the person fails to take reasonable measures to restore the property to a person entitled to it. On appeal, as he did in his motions for directed verdict during the trial, appellant argues that the State failed to produce substantial evidence that he came into control of property of another person and that the State failed to produce substantial evidence that appellant failed to take reasonable measures to restore the property to a person entitled to it with the purpose to deprive one having an interest in the property.

Regarding the issue of control of the funds, appellant argues that the funds were mistakenly given to the corporation, not him, and that he never personally exercised any control over the funds, shielding him from criminal liability. There is currently no case law defining what is meant by the term "control" in section 5–36–105, nor is the term defined in the statute. However, it is a well-established rule of statutory construction that the intent of the legislature must be gleaned from the plain and ordinary meaning of the words used in the statute. *K.M. v. State*, 335 Ark. 85, 983 S.W.2d 93 (1998). Control is defined as "(1) to exercise power or influence over; (2) to regulate or govern." *Black's Law Dictionary* 330 (7th ed.1999).

If one gives the term "control" its common meaning in the statute, it is clear that appellant came into control of the funds. The funds in question were mistakenly paid to Mike Cora Marine & ATV, Inc. Appellant claims that all of the transactions—sale of the boat, negotiation of the check, and control of the money—were performed by the corporation and that ap-

pellant was acting in a representative capacity of the company (as an agent) and, therefore, is not personally liable. We disagree.

Appellant was the sole owner of Mike Cora Marine & ATV, Inc., making the business his corporate alter-ego. The maxim *qui facit per alium, facit per se* is as applicable here, in a criminal case, as it is in an equity case. He who acts through another, whether the *alium* is corporate or natural, acts himself. This is particularly true, as here, where the corporation was the alter ego of appellant. Appellant had the authority to repay the funds since he personally issued a check to repay the Prewitts and, further, exercised authority over the funds by personally authorizing his bank to later stop payment on the check. It is also notable that the bank complied with appellant's personal instruction to stop payment on the check. The record establishes that appellant, not the business, personally determined whether the funds were returned to their rightful owner or not. We hold that there is substantial evidence in the record to support a finding that appellant came into control of the funds for the purposes of the statute.

Appellant testified at the trial that he was aware that the funds in question were not supposed to be paid to him and that he was aware that they were not his rightful property. He does not argue to the contrary on appeal. He does, however, contend that he took reasonable measures to restore the property to its rightful owner and that the State did not produce substantial evidence that he failed to take such steps. As with the term "control," the statute does not define "reasonable measures," nor is there any case law that defines the term for the purposes of the statute. Appellant testified that he initially issued a check to return the mistakenly paid funds on which he later stopped payment. Appellant contends that his offer to repay the Prewitts constituted reasonable measures. We do not agree. Appellant testified that he stopped payment on the check because an attorney he consulted regarding business matters advised him to repay Riverland, not Prewitt. However, there was no evidence produced of any effort by appellant to repay Riverland directly. In addition, the offer of repayment did not come until months after the incident and not until after the Prewitts had begun civil proceedings against appellant. There is no evidence that, prior to the filing of the suit, appellant made any efforts whatsoever to return the funds to their rightful owner. The act of stopping payment on the check, whether or not ill-advised by counsel, was a final act of "control" by appellant which deprived the rightful owner of its money.

Appellant also contends that there was no evidence that he acted "with the purpose of depriving any person having an interest in the property" as is required under the statute. Pursuant to Arkansas Code Annotated section 5–2–202(1) (Repl. 2006), a person acts purposely with respect to his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. There is sufficient evidence in this case to infer appellant's intent from his actions. By failing to repay the money to either the Prewitts or Riverland, appellant clearly intended to deprive the rightful owner of the funds of their use, since the rightful owner cannot use the funds if appellant does not repay them. We hold that the trial court's findings that appellant failed to take reasonable measures to return the funds, and that appellant acted with the purposeful intent of depriving the victims are supported by substantial evidence.

|7Appellant's second point on appeal is that the criminal statute under which he was convicted is inapplicable to the facts of this case and that his conviction effectively criminalizes a business failure. Appellant argues that the fact that his business was failing and the fact that he later went into bankruptcy should shield him from liability in this case. Appellant and his business counsel testified that they discussed whether the payment to Prewitt would be considered a "preferential payment" that could be set aside if the business filed for bankruptcy. However, as the State points out in its brief, had the check to Prewitt been allowed to clear when written, it would have cleared well in excess of ninety days prior to the business's bankruptcy filing, which is the period in which payments to creditors can be considered "preferential payments" subject to the bankruptcy proceeding. Under federal bankruptcy law, the trustee would not have been able to set aside the payment to Prewitt. *See* 11 U.S.C. § 547 (2000). Therefore, any potential bankruptcy issues do not provide a compelling reason for appellant to have withheld repayment in this case. The mere fact that appellant may have received ill-advised legal advice does not exempt him from prosecution under the state statute. *See Atkins v. State,* 287 Ark. 445, 701 S.W.2d 109 (1985); *see also Simms v. State,* 12 Ark.App. 254, 675 S.W.2d 643 (1984).

More importantly, appellant cites to no authority indicating that actions undertaken in anticipation of bankruptcy or as part of a bankruptcy proceeding preclude prosecution under state criminal statutes. In fact, this court has previously indicated that, although a bankruptcy court does have the authority to enjoin a state criminal proceeding, a discharge|8in bankruptcy does not necessarily shield a debtor from prosecution in state court for a criminal offense related to the debt. *See Cotnam v.*

*State,* 36 Ark.App. 109, 819 S.W.2d 291 (1991). Appellant's conviction under the statute means that he *unlawfully* appropriated the property of another. It was appellant's criminal act of depriving a person of their rightful property that resulted in his conviction, not normal business dealings or any subsequent bankruptcy proceedings.

Affirmed.

VAUGHT, C.J., and BROWN, J., agree.