WAYMOND M. BROWN, Judge | Appellant appeals from . the circuit court’s judgment finding him guilty of driving while intoxicated — first offense. On appeal, appellant argues that 1) the Fourth Amendment to the .United States Constitution, along with Article II, Section 15 of the Arkansas Constitution, requires reversal of his conviction based on the illegally conducted sobriety checkpoint; and 2) the circuit court erred in its failure to recognize the lack of probable cause to support any further roadside detention of appellant. We reverse. On September 20, 2012, appellant encountered a sobriety checkpoint being conducted, by the Arkansas State Police on Interstate 540. He was arrested there and later charged with driving while intoxicated- — first offense. A trial on the matter was held on July 29, 2014. The circuit court issued its ruling finding defendant guilty in a judgment entered on July 3Í, 2014. 12This timely appeal followed. When making his initial motion below, appellant’s counsel stated that “at this point I have a motion, and that’s that this is an illegal roadblock.” Then, when the State rested, he stated “we rest just with our very strong objection to the roadblock. And, again, cité a litany of cases, but for Arkansas State versus Alan [sic], 2013 [sic] Ark. 35, 425 S.W.3d 753, which quotes Price v. Delaware, Brown v. Texas.” He also cited Delaware v. Prouse[1] and Mullinax v. State.[2] Appellant’s counsel moved that the roadblock was illegal and therefore unconstitutional. He did not make any specific arguments involving the words suppress or dismiss, or any variation thereof. There was no prior hearing. Furthermore, it appears that even the circuit court was not clear on what type of motion appellant was making for it wrote in its judgment that “[t]he motions to suppress and/or dismiss of Defendant are denied.” On the record before this court, there is not sufficient evidence to determine whether appellant made a motion to suppress the evidence or a motion to dismiss the case, or both. But the circuit court denied both in its order; accordingly, we address both. When reviewing a circuit court’s denial of a motion to suppress, we make an independent determination based on the totality of the circumstances.[3] We defer to the [ ¡¡circuit court’s credibility and weight-of-the-evidence determinations, and we reverse only if the court’s decision is clearly against the preponderance of the evidence.[4] A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is considered a challenge to the sufficiency of the evidence.[5] We will affirm a circuit court’s denial of the motion if there is substantial evidence, either direct or circumstantial, to support the verdict.[6] In reviewing the sufficiency of the evidence, we review all the evidence, including any that was erroneously admitted.[7] Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture.[8] This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered.[9] A Fourth Amendment seizure occurs when a vehicle is stopped at a roadblock or checkpoint.[10] The question then becomes whether such a seizure is reasonable under the pFourth Amendment.[11] The permissibility of vehicle stops made on less than reasonable suspicion of criminal activity must be judged in each case by balancing the effect of the intrusion on the individual’s Fourth Amendment rights against the promotion of a legitimate government interest.[12] There is no doubt as to the magnitude of the State’s interest in eradicating drunk driving.[13] The United States Supreme Court has stated the following in Brown v. Texas regarding this balancing test: Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the-degree to-which the seizure, advances the. public interest, and the severity of the interference with individual liberty. A - central, concern .in balancing these competing considerations in a variety of settings has been to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society’s legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.[14] Some of the various factors to be considered in applying the balancing analysis include the supervision of the individual officers in the field, the limited discretion of the officers in stopping vehicles, the amount of interference with legitimate traffic, the subjective intrusion Ron the part of the travelers, the supervisory control over the operation, and the availability of a less intrusive means of promoting the legitimate government interest.[15] Appellant argues that the sobriety checkpoint that led to his arrest was unconstitutional and unlawful because it was conducted in an illegal manner. The State argues that compliance with. Arkansas State Police (ASP) policy and procedures, as' was indicated on the ASP Sobriety Checkpoint Plan, is sufficient to support a finding that the checkpoint was conducted in a constitutionally acceptable manner. However, the State provides no authority to support this argument. We agree with appellant that this sobriety checkpoint was conducted in an illegal manner. Corporal Dwight Lee testified that “[s]ometimes roadblocks are assigned and if [the supervisors] don’t assign them, I will make a call and say, you know, we’re going to do a checkpoint.” He testified that the supervisors “don’t actually know where” the checkpoint is. He stated that “[i]n this case, it was most‘likely [his] discretion” in setting up the checkpoint. He described himself as “an officer in the field” and stated that “[i]t is the officer in the field using his discretion as to what would happen at the roadblock.” He further noted that “as far as dealing with individuals we come in contact with, traffic flow, location, and times, all of that is the officer in the field.” They normally would only call the supervisor if there was some major occurrence like-a collision or chase. Corporal Lee testified that the officers do not keep records of the number of cars they stop, only “if [they] wrote a ticket, or 'anything like that.” Supervisors “[formally” | ^received information on the checkpoint after the checkpoint had been completed. Corporal Lee stated that supervisors would not have any direct input on the plan, simply being notified after. When questioned by the circuit court, Corporal Lee agreed that calling up officers and telling them they were going to set up a checkpoint was “all there [was]” to the procedure for the checkpoint; that he did not go over the plan with the officers or talk with them about it beyond the intended duration of the checkpoint; and that they do not even mention checkpoints to the supervisors until after they have been completed because the supervisors expect the checkpoints to be done. He restated that he sends, the paperwork in after the checkpoint. Furthermore, he agreed that the “main purpose” of setting up a checkpoint was to keep the officers from getting in trouble. Trooper Brandon Margis testified that sometimes the officers received emails from the supervisor instructing them to set up a checkpoint, but sometimes the officers in the field — sometimes including sergeants, but not always — just got together and decided to have a checkpoint. He testified that they intended to stop every vehicle, but would use their discretion to allow vehicles to “go through” when traffic was backed up until it was no longer backed up. While the plan is not required to be written, there must be a plan.[16] Officer testimony appears to belie the notion that there was a plan. Their testimony purports that there was a plan; however, there was no. supervision over the checkpoint and there was no limitation on the discretion of the officers in the field. Furthermore, while only a factor and not a 17requirement, the officer’s failure to record how many vehicles they came in contact with beyond those ticketed or arrested prevents any possible determination on the effectiveness.of the checkpoints.[17] The State says in its brief that Corporal Lee did not brief the officers because the same procedures were always followed; The State then gives a procedure that was followed. The State quotes the Sobriety Checkpoint Plan form submitted for the September 20, 2012 checkpoint to support the procedure it outlined. However, this' document was a form to be completed by an officer for a checkpoint. The State failed to direct this court to any evidence in the record — documentary or testimonial — regarding official department procedure for police checkpoints and this court found none in the record. Accordingly, we cannot say that the September 20, 2012 checkpoint was ■ conducted according to a plan or that it was conducted in ■& manner exhibiting explicit, neutral limitations .on the officer’s conduct. The circuit court erred in finding that the checkpoint was constitutional. Accordingly, we reverse the circuit court’s denial of appellant’s motion to suppress. The only evidence at trial was specific to the unconstitutional checkpoint and the fruits thereof.'■ Because there was no other evidence to support the conviction, we also reverse the circuit court’s denial of appellant’s motion to dismiss. Because we reverse on appellant’s first point on appeal, we do not address his second argument. Reversed and dismissed. Vaught, J., agrees. Gruber, J., concurs. . 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). . 53 Ark. App. 176, 920 S.W.2d 503 (1996). . Jacobs v. State, 2013 Ark. App. 177, at ¶ 5, 427 S.W.3d 83, 87 (citing Gilbert v. State, 2010 Ark. App. 857, 379 S.W.3d 774). . Id. . Stewart v. State, 2010 Ark. App. 9, at 2, 373 S.W.3d 387, 389 (citing Cora v. State, 2009 Ark. App. 431, 319 S.W.3d 281). . Id. (citing Cora, supra). . Id. (citing LaRue v. State, 34 Ark. App. 131, 806 S.W.2d 35 (1991)). . Foster v. State, 2015 Ark. App. 412, at ¶ 4, 467 S.W.3d 176, 179 (citing Thornton v. State, 2014 Ark. 157, 433 S.W.3d 216). . Id. . Jacobs, 2013 Ark. App. 177, at ¶ 6, 427 S.W.3d at 87 (citing Mich. Dep’t of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); Mullinax v. State, 327 Ark, 41, 938 S.W.2d 801 (1997)). . Id. (citing Mullinax, supra). . Partee v. State, 2010 Ark. App. 805, at ¶ 5, 379 S.W.3d 82, 84 (citing Camp v. State, 26 Ark. App. 299, 764 S.W.2d 463 (1989)). . Mullinax, 327 Ark. at 46, 938 S.W.2d at 804 (citing Mich. Dep’t of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990)). . 443 U.S. 47, 50-51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (internal citations omitted). . Partee, 2010 Ark. App. 805, at ¶ 5-6, 379 S.W.3d at 85 (citing Theresa Ludwig Kruk, Annotation; Validity of Routine Roadblocks by State or Local Police for Purpose of Discovery of Vehicular or Driving Violations, 37 A.L.R,4th 10 (1985)), . Mullinax, 327 Ark. at 49,-938 S.W.2d at 806. . Id., 327 Ark. at 47, 938 S.W.2d at 804 (citing Sitz, 496, U.S. at 454-55, 110 S.Ct. 2481).