

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–15–759

| | |
|---|---|
| TRAVIS WAYNE JORDAN<br>APPELLANT | **Opinion Delivered** May 11, 2016 |
| V. | APPEAL FROM SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. CR–2014–918] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JAMES O. COX, JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Travis Wayne Jordan was convicted by a Sebastian County Circuit Court jury of possession of methamphetamine with intent to deliver, a Class B felony; possession of drug paraphernalia, a Class B felony; and possession of marijuana, a Class A misdemeanor. The circuit court sentenced Jordan as a habitual offender to thirty years' imprisonment for possession of methamphetamine with intent to deliver, thirty years' suspended imposition of sentence for possession of drug paraphernalia, and one year in jail for possession of marijuana. On appeal, Jordan argues that the evidence to convict him was insufficient and that the circuit court erred in denying his motion to suppress evidence. We affirm.

I. *Facts and Procedural History*

On March 17, 2015, Jordan filed a motion to suppress the evidence that was found when the police entered his motel room without a warrant. On May 6, 2015, there was a

SLIP OPINION

hearing on the matter. Amanda Ibarra, the Motel 6 manager on duty on October 1, 2014, when the contraband was discovered, testified. Ibarra stated that a housekeeper told her that Jordan had been arrested on the motel property immediately after he had come to the office that morning and paid for his room through the next day. Ibarra explained that Motel 6 had a policy of immediately evicting a guest if he or she is arrested on the property. She testified that a guest's arrest voids the contract with Motel 6 and that Motel 6 immediately becomes the custodian of the room in such an event. Ibarra testified that Jordan did not sign a written contract to this effect that guests are generally not informed of the eviction policy either verbally or in writing; in fact, Ibarra stated that there was no way Jordan would have known he had been evicted. Ibarra stated that around noon she entered the room to check to ensure it was unoccupied, to clear the room for the housekeeper, and to pack Jordan's belongings. When she entered the room, she saw drugs and drug paraphernalia on the table, so she closed the door and immediately called police. At some point during the day, a woman came to Motel 6 to collect Jordan's belongings, and she presented Ibarra with a signed note from Jordan giving her the authority to do so. Jordan's payment for the room for that night was refunded to the woman.

Officer Travis Watkins of the Fort Smith Police Department also testified at the hearing. Officer Watkins testified that on October 1, 2014, he and Corporal Joey Boyd were at the Motel 6 for other police-related business when they saw Jordan, whom they knew had a warrant for his arrest. They took him into custody at that time.

Corporal Joey Boyd also testified. He reiterated Officer Watkins's testimony that they

2

were already at Motel 6 on other business when they saw Jordan and arrested him on an existing warrant. Officer Boyd testified that somewhere around 2:30 p.m. or 3:00 p.m. they returned to Motel 6 after Ibarra had called and informed them that she had found drugs and paraphernalia in Jordan's room. Officer Boyd testified that he called the prosecutor's office about getting a warrant and that it was determined that he did not need a warrant based on the motel's eviction policy. Officer Boyd also testified that he confirmed with Ibarra and the guest registry that the room where they found the contraband had been Jordan's.

The State argued that Jordan had no standing to challenge the search because he had been evicted from the room pursuant to the Motel 6 eviction policy. In support of this argument, the State pointed out that Jordan's payment for the night had been refunded to him. Even if he did have standing, the State argued, the inevitable discovery doctrine applied because he had remained in jail from October 1, 2014, through the next two weeks. The State reasoned that Jordan's room would have been cleaned and emptied before he had a chance to get his things, and the contraband would have been found at that time.

Defense counsel argued that the State did not know why Jordan had been arrested and that Jordan could have bonded out the morning he was arrested. Jordan could have returned before the maid had cleaned the room if the new charges had not been brought pursuant to the warrantless search. In support of this argument defense counsel pointed out that Jordan had paid for the room through the next day, and he had not been aware of the eviction policy. The circuit court asked defense counsel about daily cleaning of the rooms, which would have happened around noon before the police searched the room around 2:30 p.m.,

and how that might affect the argument against the inevitable-discovery doctrine. Counsel responded that housekeeping had not entered the room on the day of the search and reiterated that the room was entered only because of the warrantless search. The circuit court denied the motion to suppress. No written order denying the motion was entered, but the court stated its reasoning for denying the motion from the bench:

> This young lady was going into the room in the performance of her duties to get his belongings because he had been evicted because he had been arrested. She was doing what she was authorized and directed to do and it was her duty. Plus, he had been evicted. So there is some question as to whether or not this gentleman has standing. The third is that inevitably that a maid or somebody would have gone in there and would have discovered it, but the main point is that this woman was doing what she was asked to do when somebody gets arrested, they are evicted and they go in and get their belongings and secure them in a safe place for them and then they would refund them their money. The motion to suppress is going to be denied.

Jordan renewed his motion to suppress before the beginning of the jury trial on July 22, 2015, and the circuit court upheld the denial of the motion.

At the trial, Amanda Ibarra testified that on October 1, 2014, she was the manager on duty and that it was her job to go to Jordan's room to bag and tag his belongings pursuant to his arrest on the property and his subsequent eviction. Ibarra testified that when she opened the door, she saw the drugs and paraphernalia and called Officer Boyd immediately.

Ibarra testified that the electronic key log that shows whose key was used to enter a room and when the room was entered must have malfunctioned, because the log showed that the room was entered only once at 2:17 p.m., and she was certain the room had been entered at least twice with her key. Ibarra testified that she was pretty sure the first time she opened the door was around noon on the day of Jordan's arrest. She testified that to the best of her

4

knowledge, the maid did not enter the room that day, but she could not be certain.

Officer Boyd testified as well. He stated that he received a call from Ibarra that drugs had been found in the room and that he and Officer Watkins returned to the motel, entered the room, and found empty baggies, digital scales, a straw for injecting narcotics and for moving narcotics to a scale to be weighed, three baggies containing what looked to be methamphetamine, and a marijuana cigarette. Jordan's wallet containing his driver's license was near the contraband. Officer Boyd testified that the scales indicated that the drugs were being prepared for sale. Officer Boyd testified that it was not apparent to him whether others were staying in the room, and that Jordan had told him that he was staying in the room by himself.

Dan Hedges, a forensic chemist from the state crime lab, testified that he tested the material and found it to be methamphetamine and marijuana. Paul Smith, the drug task force coordinator for Sebastian and Crawford Counties stated that he reviewed the file and that the amount of methamphetamine found was a "resale amount" and that the presence of digital scales was also a factor in determining that the drugs were for resale. After Smith's testimony, the State rested.

Defense counsel moved for a directed verdict at this time, stating,

> At this time I would move for a directed verdict on the basis that the State has failed to make a case beyond a reasonable doubt because there is a failure to show that there was any sale of drugs, that my client was actually in possession of the drugs. And we would renew the motion that we made prior to the court proceedings today on the motion to suppress.

The court denied the motion to suppress and the motion for a directed verdict.

SLIP OPINION

After the defense rested, the motion for directed verdict was renewed in the following manner: "We renew the motion that I previously made at the end of the State's case, including renewing all motions." The court responded, "Renewing motions for the reasons previously stated?" Defense counsel stated, "yes, sir." The circuit court denied the motions.

The jury returned a verdict of guilty of all charges. Jordan was sentenced to thirty years in the Arkansas Department of Correction for possession of methamphetamine with intent to deliver and thirty years with a suspended imposition of sentence on the possession-of-drug-paraphernalia charge. The sentences for the felonies were set to run concurrently. The court sentenced Jordan to one year in the county jail, satisfied by the ADC sentence, on the misdemeanor possession charge. Jordan filed a timely notice of appeal.

II. *Points on Appeal*

A. Sufficiency of the Evidence

First, we must address whether the issue of the sufficiency of the evidence convicting Jordan of possession of drug paraphernalia was preserved for our review. We hold that it was not, and we will only address the sufficiency of the evidence concerning the charges of possession of methamphetamine with intent to deliver and possession of marijuana.

A challenge to the sufficiency of the evidence is preserved by making a specific motion for directed verdict at the close of the State's evidence and at the close of all of the evidence. *Perry v. State*, 2014 Ark. 535, 2–3, 453 S.W.3d 650, 652–53.

Rule 33.1 of the Arkansas Rules of Criminal Procedure states in relevant part:

(a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor. . . .

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsection[a] . . . will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict . . . A motion for directed verdict . . . based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict . . . preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict . . . is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

Our supreme court has held that "when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof." *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005). A general motion for directed verdict that merely asserts that the State has failed to prove its case is inadequate to preserve a sufficiency challenge for appeal. *Perry*, *supra*. Failure to make the motions for directed verdict with specificity regarding the sufficiency issue on appeal equates to the motion never having been made. *Maxwell v. State*, 373 Ark. 553, 559, 285 S.W.3d 195, 200 (2008).

In the present case, the motion was made in the following way at the close of the State's case: "At this time I would move for a directed verdict on the basis that the State has failed to make a case beyond a reasonable doubt because there is a failure to show that there was any sale of drugs, that my client was actually in possession of the drugs." Jordan's motion

SLIP OPINION

only addressed the sale of drugs (methamphetamine) and possession of drugs (methamphetamine and marijuana.) Counsel did not address the possession of drug paraphernalia in the motion for directed verdict; thus, Jordan cannot challenge the sufficiency of the evidence as to the possession-of-drug-paraphernalia charge.

We now turn to the challenge to the sufficiency of the evidence relating to the possession-with-intent-to-distribute methamphetamine and possession of marijuana charges, which were described with specificity in the motion for directed verdict. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). Our supreme court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id*.

Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003). Whether the evidence excludes every other hypothesis is left to the jury to decide. *Carmichael v. State*, 340 Ark. 598, 12 S.W.3d 225 (2000). The credibility of witnesses is an issue for the jury and not the court. *Burley v. State*,

SLIP OPINION

348 Ark. 422, 73 S.W.3d 600 (2002). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Our supreme court has explained that, in constructive-possession cases, the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused. *McKenzie v. State*, 362 Ark. 257, 262–63, 208 S.W.3d 173, 175 (2005). Constructive possession may be established by circumstantial evidence. *George v. State*, 356 Ark. 345, 151 S.W.3d 770 (2004). When seeking to prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband. *Id.* This control can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *McKenzie, supra.*

Arkansas Code Annotated section 5-64-420 (Supp. 2014) sets forth that

a) Except as provided by this chapter, it is unlawful if a person possesses methamphetamine or cocaine with the purpose to deliver the methamphetamine or cocaine. Purpose to deliver may be shown by any of the following factors:

(1) The person possesses the means to weigh, separate, or package methamphetamine or cocaine;

(2) The person possesses a record indicating a drug-related transaction;

(3) The methamphetamine or cocaine is separated and packaged in a manner to

SLIP OPINION

facilitate delivery;

(4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of methamphetamine or cocaine;

(5) The person possesses at least two (2) other controlled substances in any amount; or

(6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver methamphetamine or cocaine.

Arkansas Code Annotated section 5-64-419(b)(4) dictates that a person is guilty of a Class A misdemeanor if he possesses less than 28 grams of marijuana.

The testimony at trial supported the jury's conviction of Jordan of possession of the drugs. Motel 6 manager Amanda Ibarra testified that on October 1, 2014, Jordan was evicted pursuant to motel policy. Upon opening the door to Jordan's room, she testified that she saw drugs and drug paraphernalia. She closed the door and called police. Officer Joey Boyd and Officer Travis Watkins of the Fort Smith Police Department responded to her call, and when they entered the room, they found empty Ziploc bags, a set of digital scales, three bags containing what was later determined to be a total of 2.469 grams of methamphetamine, a marijuana cigarette, a pocket knife, a glass pipe, and a straw used for injecting narcotics. Jordan's wallet was next to the drugs on the table, and in it, the officers found Jordan's driver's license and other identification with Jordan's name on it. Jordan had paid for the room, and no one was listed with him on the guest registry. Officer Boyd testified that Jordan had told him that he had been staying alone at the motel. Thus, the evidence was sufficient that Jordan was in possession of the drugs because he had exercised control over the motel room.

SLIP OPINION

The State also presented sufficient evidence to show that Jordan had intended to deliver the methamphetamine. Officer Boyd testified that, in his experience, the Ziploc bags and digital scales indicated that the methamphetamine was being weighed and packaged for sale. Paul Smith, the director of the Sebastian and Crawford County Drug Task Force, testified that the average user of methamphetamine possesses between .25 grams and one gram of the drug and that the amount of methamphetamine found in Jordan's room, over two grams, was generally considered a salable amount. He also testified that the Ziploc bags and digital scales indicated that the methamphetamine was not for personal use.

Based on these facts presented in testimony at the trial, the State sufficiently put forth evidence to support Jordan's conviction for felony possession of methamphetamine with intent to deliver and to support his conviction for misdemeanor possession of marijuana. As we stated earlier, the sufficiency-of-the-evidence challenge to Jordan's conviction for possession of drug paraphernalia was not specifically made such that we may review that conviction. Regarding the sufficiency of the evidence to support the jury's convictions on all of the charges, we affirm.

### B. Motion to Suppress

For his second point on appeal, Jordan argues that the motion to suppress the evidence should have been granted. We must affirm the circuit court's denial. Our supreme court has held that, where the circuit court bases its decision on two independent grounds and the appellant challenges only one ground on appeal, the appellate court will affirm without

SLIP OPINION

addressing either basis of the circuit court's decision. *Fuson v. State*, 2011 Ark. 374, at 8, 383 S.W.3d 848, 853–54.

In *Fuson*, the circuit court denied the motion to suppress on two grounds: it had found that the search was proper and that, even if the search was not justified by the rule, the evidence inevitably would have been discovered during the inventory search. On appeal, appellant focused his argument entirely on the first aspect of the circuit court's ruling, and did not address the court's alternative ruling applying the inevitable-discovery rule to find that the evidence would have been found during the course of the inventory search.

In its denial of Jordan's motion to suppress the circuit court made the following comments:

> In this situation you have an employee, who the court is of the opinion has the right to go into that room, who observed drugs and paraphernalia and they called the police. In fact, in the case you cited, they say, it is true as we said in Jeffers that when a person engages a hotel room he undoubtedly gives implied or expressed permission to such persons as maid, janitors or repairmen to enter his room in the performance of their duties. This young lady was going into room in the performance of her duties to get his belongings because he had been evicted because he had been arrested. She was doing what she was authorized and directed to do and it was her duty. Plus, he had been evicted. So there is some question as to whether or not this gentleman has standing. The third is that inevitably that a maid or somebody would have gone in there and would have discovered it, but the main point is that this woman was doing what she was asked to do when somebody gets arrested, they are evicted and they go in and get their belongings and secure them in a safe place for them and then they would refund them their money. The motion to suppress is going to be denied.

The circuit court in this instance denied the motion to suppress on two grounds. First, the court found that the search was proper because motel employees were authorized by implied permission to enter the room in performance of their duties. Second, the circuit court

found that the inevitable-discovery exception applied, because an employee would have eventually entered the room and discovered the evidence. On appeal, Jordan addresses only the implied-permission-ground basis for the circuit court's denial of the motion to suppress. He does not address the court's second, inevitable-discovery basis for denial.[1] As we set forth in *Fuson*, *supra*, when an appellant fails to challenge both grounds for the circuit court's denial, we decline to address the merits of either basis, and on this point we affirm.

Affirmed.

HARRISON and KINARD, JJ., agree.

*David L. Dunagin*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.

---

[1]Though the circuit court enumerated three grounds for its denial of the motion to suppress, only two grounds were unequivocally stated. The court's statement that there was some question as to whether Jordan had standing to challenge the search was not clearly found as a ground for denial of the motion to suppress.