RAYMOND R. ABRAMSON, Judge
Jamal Akram was convicted by a Mississippi County Circuit Court jury of first-degree murder. He was sentenced as a habitual offender to sixty years' imprisonment in the Arkansas Department of Correction. On appeal, he claims that (1) the circuit court erred by denying his motion to suppress his statement, (2) the State improperly commented on his failure to deny his guilt, and (3) there was insufficient evidence to support his first-degree-murder conviction. We affirm.
A motion for a directed verdict is a challenge to the sufficiency of the evidence. Steele v. State , 2014 Ark. App. 257, 434 S.W.3d 424. Although this is Akram's final point on appeal, double-jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence before the other issues on appeal. See *512 Jones v. State , 349 Ark. 331, 78 S.W.3d 104(2002).
When the sufficiency of the evidence is challenged on appeal from a criminal conviction, we consider only that proof that supports the conviction. Singleton-Harris v. State , 2014 Ark. App. 436, 439 S.W.3d 720. We view that evidence and all reasonable inferences deducible therefrom in the light most favorable to the State. Davis v. State , 2011 Ark. App. 261, 378 S.W.3d 873. We will affirm if the finding of guilt is supported by substantial evidence. Id. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. Clayton v. State , 2011 Ark. App. 692, 2011 WL 5563189. The jury is free to believe all or part of a witness's testimony, and we do not weigh the credibility of witnesses on appeal because that is a job for the fact-finder and not the appellate court. Sizemore v. State , 2015 Ark. App. 295, 462 S.W.3d 364.
In order to preserve a challenge to the sufficiency of the evidence, a defendant must make a motion for directed verdict at the close of the State's case and at the close of all the evidence and must state the specific grounds for the motion. Ark. R. Crim. P. 33.1(a) (2017). It is well settled that Rule 33.1 is strictly construed, and a defendant's failure to adhere to the requirements of Rule 33.1(a) will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict. Ark. R. Crim. P. 33.1(c). A general motion for directed verdict that merely asserts that the State has failed to prove its case is inadequate to preserve a sufficiency challenge for appeal. Jordan v. State , 2016 Ark. App. 255, at 7, 492 S.W.3d 543, 548. Failure to make the motion for directed verdict with specificity regarding the sufficiency issue on appeal equates to the motion never having been made. E.g. , id.
Akram did not comply with the requirements of Rule 33.1 ; therefore, his sufficiency argument is not preserved for this court's review. At the close of the State's evidence, Akram moved for a directed verdict because the State's evidence was "not sufficient as a matter of the law to sustain a conviction." At the close of all the evidence, Akram stated that he was "asking for a direct[ed] verdict" because the State "hadn't proven the burden of guilt." These are general motions for directed verdict, and they do not specify any missing elements. Accordingly, they are insufficient to preserve the issue for appeal. See, e.g. , id.
We now turn to Akram's argument that the circuit court erred by denying his motion to suppress. Before trial, the circuit court held a hearing on the motion to suppress Akram's custodial statement. Detective Matt Huckabay of the Blytheville Police Department testified that on March 18, 2016, Linda Hatcher, Akram's live-in girlfriend, was found beaten to death. Akram was the only other person in the house, and he was taken into custody around midnight. Detective Huckabay testified that he did not interview Akram the night of the murder because an officer had told him that Akram was intoxicated. The following afternoon at 2:35 p.m., Detective Huckabay interviewed Akram. The audio recording of the interview was introduced into evidence at the suppression hearing.
At the beginning of the interview, Detective Huckabay handed Akram a copy of his Miranda rights and read the rights aloud. Akram acknowledged that he understood his rights and completed the Miranda form by providing his date of birth, address, and signature. Detective Huckabay then asked Akram a series of background *513 questions that Akram was able to answer.
Akram explained that he spent most of the day on March 18, 2016, with Pauline Richardson, his other girlfriend. Akram drank gin and smoked marijuana throughout the day. Akram claimed he did not remember what time he got home or what happened to Linda. He stated that he did not "remember doing that to [Linda]" and that he could not remember what had happened or why there was blood all over the house. Akram did not affirmatively deny that he had murdered Linda.
Detective Huckabay testified that Akram was upset and crying during the interview but that he did not appear to be intoxicated. Detective Huckabay also stated that Akram did not smell of alcohol at the time of the interview. After Detective Huckabay's testimony, the State introduced certified copies of two of Akram's previous convictions-one for robbery and one for manslaughter-to show his familiarity with the criminal-justice system. Akram argued that he was intoxicated the night before the interview and that Detective Huckabay did not know whether Akram was still intoxicated at the time of the interview.
Akram also alleged that he did not have his reading glasses and was unable to read the Miranda -rights forms. The circuit court found that Detective Huckabay read verbatim the Miranda -rights and waiver form to Akram and that Akram voluntarily waived those rights. The circuit court stated that on the tape of the interview Akram sounded "coherent" and "articulate" and "[d]id not slur his words" and "[d]id not appear to be intoxicated." Based on these findings, the circuit court determined that Akram's waiver was voluntary and denied his motion to suppress.
On appeal, Akram claims that he had been intoxicated the day before he executed his Miranda waiver, so his waiver was therefore involuntary. "In reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings." Johnson v. State , 2015 Ark. 387, at 3, 472 S.W.3d 486, 488 (quoting Jackson v. State , 2013 Ark. 201 at 5, 427 S.W.3d 607, 611 ). A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after reviewing the entirety of the evidence, is left with a definite and firm conviction that a mistake has been made. Id. Specifically, our court reviews a circuit court's denial of a motion to suppress custodial statements based on the totality of the circumstances. E.g. , Grillot v. State , 353 Ark. 294, 310, 107 S.W.3d 136, 145 (2003). To make this determination, we review the totality of the circumstances surrounding the statement, including "the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; statements made by the interrogating officers; and the vulnerability of the defendant." Winters v. State , 2013 Ark. 193, at 6, 427 S.W.3d 597, 601. Conflicts in testimony and evaluating the "credibility of witnesses testifying about circumstances surrounding an appellant's custodial confession" are for the circuit court to determine. McPeak v. State , 2012 Ark. App. 234, at 5, 406 S.W.3d 430, 434. We will not reverse a circuit court's ruling on a suppression issue absent a showing that the decision was clearly against the preponderance of the evidence. E.g. , id.
*514 A statement made while in custody is presumptively involuntary, and the State must prove by a preponderance of the evidence that the defendant made the custodial statement voluntarily, knowingly, and intelligently. E.g. , Grillot , 353 Ark. at 310-11, 107 S.W.3d at 145. In order to determine whether a waiver of Miranda rights is voluntary, our court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. E.g. , id. at 311, 107 S.W.3d at 145-46. When an appellant claims that his or her Miranda waiver was rendered involuntary because of drug or alcohol consumption, the level of the appellant's comprehension is a factual matter to be resolved by the circuit court. E.g. , id. at 311, 107 S.W.3d at 146. In deciding if a defendant voluntarily waived his or her rights, we determine whether the individual was of sufficient mental capacity to know what he or she was saying-capable of realizing the meaning of his or her statement-and that he or she was not suffering from any hallucinations or delusions. E.g. , id. at 311-12, 107 S.W.3d at 146.
In this case, Detective Huckabay testified that he did not interview Akram on the night of the murder because an officer suspected that Akram was intoxicated-Akram had bloodshot eyes, slurred speech, and smelled of intoxicants. At 2:35 p.m. the following day-over 15 hours later-Akram showed no signs of intoxication. He was coherent and articulate and did not have slurred speech or smell of alcohol. Detective Huckabay read Akram his Miranda rights, and Akram acknowledged and signed the form, stating that he understood his rights. Akram was able to clearly answer questions about his personal history and background.
Here, the circuit court listened to Akram's recorded statement and found that he did not appear to be intoxicated. Based on Detective Huckabay's testimony, the recording of the interview, and Akram's familiarity with the criminal-justice system, the circuit court's decision to deny the motion to suppress was not clearly against the preponderance of the evidence. See Harper v. State , 359 Ark. 142, 155, 194 S.W.3d 730, 738 (2004) (affirming the circuit court's decision to deny Harper's motion to suppress because officers testified that Harper "did not appear to be intoxicated, that he did not smell of alcohol, that he was steady on his feet, and that he was able to understand and respond to their questions"). Therefore, we affirm on this point.
On appeal, Akram also argues that the circuit court erred in allowing the prosecuting attorney to make improper remarks during closing argument. Akram claims that the State should not have been allowed to make multiple statements in its closing argument regarding his interview with police and the fact that he never denied that he had killed Linda. However, this issue is not preserved for our review. We will not review any alleged error in the State's closing argument absent a contemporaneous objection at trial. E.g. , Lard v. State , 2014 Ark. 1, at 26, 431 S.W.3d 249, 268. At trial, Akram failed to object to any statement made by the State during closing arguments. As such, Akram cannot now challenge the statements on appeal. See, e.g. , Smith v. State , 330 Ark. 50, 53, 953 S.W.2d 870, 871 (1997) (declining to reach the merits of Smith's claim that the prosecutor's comments violated his right not to testify since Smith failed to make a contemporaneous objection to the comment).
We agree with the State that in this case there is also no applicable exception to the contemporaneous-objection rule enunciated *515 in Wicks v. State , 270 Ark. 781, 606 S.W.2d 366 (1980). Because Akram failed to contemporaneously object to the prosecutor's statements in closing argument and because no Wicks exception applies, this argument is not preserved.
Two of Akram's three appellate arguments are not preserved for our review, and we hold that the circuit court properly denied Akram's motion to suppress; accordingly, we affirm Akram's conviction of murder in the first degree.
Affirmed.
Harrison and Brown, JJ., agree.