Cite as 2019 Ark. App. 495

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-19-309

|  |  |
|---|---|
| | **Opinion Delivered** October 30, 2019 |
| ROGRICK ADWAY, JR.<br>APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-17-353] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JODI RAINES DENNIS, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

In July 2017, Rogrick Adway, Jr., was charged with simultaneous possession of drugs and firearms, possession of a Schedule VI controlled substance with purpose to deliver, fleeing, and use or possession of drug paraphernalia. After a jury trial, Adway was found guilty of all counts and sentenced to an aggregate term of fifteen years' imprisonment. On appeal, he argues that the circuit court erred in (1) denying his motion for directed verdict and (2) denying his request for a mistrial. We affirm the circuit court. Specific facts pertinent to each point on appeal will be discussed below.

I. *Directed Verdict*

At a jury trial on 17 September 2018, Detective Richard McCorvy with the Pine Bluff Police Department testified that on 2 June 2017, he and Detective Matthew Pate were surveilling the Piney Wood Apartments based on suspicion of drug activity. McCorvy saw Adway exit an apartment carrying a backpack on his shoulder and "looking from side to

side suspiciously . . . to make sure nobody was looking while he was messing with the backpack." A second man, Jose Cirino, also left the apartment, locked the door, and got into a green Toyota Camry. Adway walked to the Camry, put the backpack inside the car through the window, then walked to a different apartment carrying some tissue paper. Adway returned a few minutes later, got into the passenger side of the car, and the two men left the apartment complex. McCorvy and Pate followed the car and made a traffic stop a short time later. Cirino did not stop the car immediately but instead drove slowly for another one hundred feet before stopping near a back gate in the apartment complex. As the car was still moving, McCorvy observed both men "reaching down," and it appeared that the men were "trying to hide something." When the car stopped, Adway exited the passenger side with the backpack and ran back into the apartment complex. McCorvy chased him, and as he went around the corner of a building, he saw Adway emerging from behind an AC unit—minus one backpack. McCorvy saw the backpack next to the AC unit but continued to chase Adway and took him into custody a short time later. As they walked back toward the cars, Detective Pate approached and continued to escort Adway while McCorvy went back and retrieved the backpack. Detective Pate also testified and corroborated McCorvy's account of what happened before, during, and after the traffic stop.

Meghan Wells, a former employee of the Pine Bluff Police Department, testified that on 2 June 2017, she was dispatched to the Piney Wood Apartments and met Detective McCorvy, who gave her the backpack to process. Wells prepared an evidence log of all the items in the backpack, including Adway's identification, phone chargers, and plastic sandwich bags. The backpack contents also included two small mason jars containing

2

marijuana, a half-full box of Blazer 9mm cartridges, a black digital scale, a Crown Royal

bag containing two types of 9mm cartridges, a .38 Smith & Wesson revolver, and a 9mm

handgun. Wells also identified another small bag of marijuana that had been found in the

car's cup holder.

After the State rested, Adway moved for a directed verdict as follows:

> We believe that the State has failed to show sufficient evidence to go forward
> in this matter, that they have not sufficiently proven their cases on these
> various four charges. . . . The first one that I have is the simultaneous
> possession of drugs and firearms. The second one is 5-64-436, the purpose
> to deliver. And then the third charge is the possession of drug paraphernalia
> with purpose to use or manufacture. I'm not going to make the motion on
> the fleeing charge—it's a misdemeanor—but I would on the—the three
> felonies.

Adway's motion was denied.[1]

The defense presented the testimony of Ivy Alston, who rented the apartment that

Adway and Cirino had been in and who owned the Toyota Camry driven by them on June

2. She said that she had known Adway approximately two months at the time of this

incident, and she denied having ever seen Adway with guns, drugs, or the backpack.

Adway testified that he was eighteen years old when this incident occurred and had

just graduated from high school two weeks prior. He said that his girlfriend lived at Piney

Woods Apartments and that he also visited Cirino at the apartments. He admitted that the

---

[1]Adway also objected to the State's criminal information, which charged him with use or possession of drug paraphernalia under section 5-64-443(c), a statute specific to methamphetamine or cocaine, instead of subsection (d), which applies to other drugs like marijuana. The State moved to amend the information to reflect the correct subsection, and Adway objected to the amendment. This argument has been abandoned on appeal.

3

backpack belonged to him but denied ever having firearms or illegal drugs in his possession. He explained that when he and Cirino left the apartment that day, the only things in his backpack were his identification, phone chargers, his keys, and some tissue. According to Adway, he put the backpack inside the car, took some tissue to his girlfriend's cousin's apartment, and returned approximately ten minutes later. He testified that after the car was pulled over by the officers, he got out of the car, "saw a gun," and became scared, so he "took off running." He said he was wearing the backpack but threw it off while running because it was slowing him down. He said the backpack felt heavier, but he did not know what was in it.

After the defense rested, Adway renewed his motion for directed verdict, again arguing that the State had failed to prove beyond a reasonable doubt any of the offenses charged. "The testimony, even taken in the light of the—to the State, which is what the statutory—the requirements are—is that there was a brief period of time in which my client had a backpack and then it was gone." The renewed motion was denied. Adway was found guilty, was sentenced as indicated above, and has now appealed.

A motion for directed verdict is considered a challenge to the sufficiency of the evidence. *Cora v. State*, 2009 Ark. App. 431, 319 S.W.3d 281. We will affirm a circuit court's denial of the motion if there is substantial evidence, either direct or circumstantial, to support the verdict. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Id.* The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict is considered. *Id.*

To preserve a challenge to the sufficiency of the evidence, a defendant must move for a directed verdict at the close of the State's case and at the close of all the evidence and must state the specific grounds for the motion. Ark. R. Crim. P. 33.1(a) (2019). Rule 33.1 is strictly construed. A defendant's failure to adhere to the rule waives any question pertaining to the sufficiency of the evidence to support the verdict. Ark. R. Crim. P. 33.1(c). A general motion for directed verdict that merely asserts that the State has failed to prove its case is inadequate to preserve a sufficiency challenge for appeal. *Jordan v. State*, 2016 Ark. App. 255, 492 S.W.3d 543.

Adway's motion did not meet the requirements of Rule 33.1; therefore, his sufficiency argument is not preserved for this court's review. At the close of the State's evidence, Adway moved for a directed verdict because the State "failed to show sufficient evidence to go forward in this matter." At the close of all the evidence, Adway renewed his motion, arguing that the State "had failed to prove . . . beyond a reasonable doubt any of the offenses as charged."

These are general motions for directed verdict because they do not specify any missing elements. This means they cannot preserve the issue for appeal. *Jordan*, *supra*. To the extent that the statement "there was a brief period of time in which my client had a backpack and then it was gone" can be construed as a specific argument, it is not preserved because Adway has made a different argument on appeal. To this court, Adway contends that the backpack was left in Cirino's possession for a short time, so the jury could not find that Adway had committed the charged offenses without resorting to speculation and conjecture. Parties cannot change the grounds for an objection on appeal but are bound by

5

the scope and nature of the objections and arguments presented at trial. *Goins v. State*, 2019 Ark. App. 11, 568 S.W.3d 300.

## II. *Mistrial*

After the jury had delivered its guilty verdicts and retired to deliberate sentencing, the bailiff informed the circuit court that an alternate juror had been mistakenly included in deliberations during the guilt phase of the trial. Defense counsel remarked,

> I would think that under these circumstances that we receive the jurors' decision with regard to their present sentence because the alternate juror has, in fact, been excused. . . . [B]ecause he has been legitimately convicted by a jury of either 12 or 13, that he—he has to be taken into custody. I don't think that even if I move for a new trial that that obviates the taking him into custody of the—the sheriff and placed in county jail. And I would ask then that the Court hold the imposition . . . of any sentence in abeyance and give us time to present briefs on the issue and make arguments. I believe that the case there says that you have to have a final judgment before you can file a motion for new trial.

The court and the attorneys agreed to accept the jury's sentence but postpone imposition of sentence until the parties had an opportunity to brief the issue. After the jury had returned its recommended sentences, the court stated it was "going to postpone imposition of this sentence until we can determine the legal effect of that error." Defense counsel moved for a mistrial, noting that "we agree that the oral motion for a mistrial today is the right motion to be made, and I will also reduce that to writing when I file my motion for a mistrial and my accompanying brief." The State responded that the motion for mistrial should not be granted because there had been no showing of prejudice but agreed that briefing "would be the best way to handle this matter moving forward."

Adway filed a written "motion for declaration of mistrial" and asserted that he had been denied his constitutional right to be tried by a twelve-member jury. He denied that

6

he was required to show prejudice but also argued that "prejudice exists due to the fact that the Defendant was convicted in opposition to his adamant insistence of innocence on all charges." Thus, he argued he was entitled to a new trial. He acknowledged that "[t]here was no recitation from the jury foreman as to whether or not all thirteen (13) individuals that were in the jury room participated in discussion and[/]or decision. Nor was any inquiry made of the individual jurors."

The State responded that Adway had to make a specific showing of prejudice but failed to do so because there was no evidence of prejudice other than the mere presence of the alternate juror. It argued, "There is zero evidence contained in the record that the alternate juror participated in the deliberations, much less exercised some level of undue or improper influence over the other jury panel members." The State contended that the appellate courts have consistently held that mere presence alone does not rise to the level of error that warrants a mistrial.

On 30 October 2018, the circuit court denied the motion for mistrial. The court conceded that the presence of the alternate juror was error but noted the question was whether a mistrial was warranted. In making its decision, the court reviewed *McDonald v. State*, 37 Ark. App. 61, 824 S.W.2d 396 (1992), in which an alternate juror had entered the jury room fifteen minutes after deliberations had begun and remained for approximately fifteen minutes, until the jury took its first break. After the break, the alternate juror did not return to deliberations, and the jury deliberated several more hours before delivering a verdict. The impaneled jurors were later questioned on whether the alternate juror's presence resulted in improper influence; the jurors vaguely recalled the alternate juror's

7

presence but did not remember her asking questions or expressing any views on the case.

In rejecting McDonald's argument that the alternate juror's "mere presence" compromised

the jury's verdict, this court noted that the circuit court had found that

> no extraneous prejudicial information was improperly brought to the jury's attention, nor was any outside influence brought to bear upon any juror as a result of the alternate juror's presence. Although the alternate's entry into the jury room was unauthorized, appellant has not shown that improper influence was occasioned by her "mere presence," or that he suffered any resulting prejudice. Under these circumstances, we cannot say that the trial court abused its discretion in denying the motion for new trial.

37 Ark. App. at 66, 824 S.W.2d at 400.

> Likewise, here, the circuit court found,

> The Adway alternate, along with the other jurors, was administered the required oath, listened to the same testimony, reviewed the same documents, and received the same jury instructions. The [jury] deliberated for approximately 45 minutes without any indication of dissent or the receipt of extraneous prejudicial information. Without hesitation the foreperson advised the Court that the verdict was unanimous. There is no showing of prejudice.

The decision whether to grant a new trial is left to the sound discretion of the circuit

court, and it is not reversed in the absence of an abuse of discretion or manifest prejudice to

the complaining party. *Johnson v. State*, 2017 Ark. 106, 515 S.W.3d 116. The Supreme

Court of the United States has held that while the presence of an alternate juror during

deliberations may be error, prejudice will not be presumed, and the burden is on the

defendant to make "a specific showing of prejudice." *U.S. v. Olano*, 507 U.S. 725, 737

(1993).

Adway argues on appeal that the circuit court abused its discretion in denying his

motion for mistrial and distinguishes *McDonald*, noting that the alternate juror in this case

8

was present for the entirety of deliberations, not just fifteen minutes as in *McDonald*. He also cites as persuasive authority *Adams v. State*, 275 S.W.3d 61 (Tex. Ct. App. 2008),[2] in which the Texas Court of Appeals held that an alternate juror's presence during deliberations violated Article V, Section 13 of the Texas Constitution and was not harmless beyond a reasonable doubt; thus, the case was reversed and remanded. What Adway overlooks, however, is that *Adams* was later reversed. *See Trinidad v. State*, 312 S.W.3d 23 (Tex. Crim. App. 2010) (holding that in two separate cases, the court of appeals had erred in concluding that the trial court subjected each appellant to trial by a jury of more than twelve members, in violation of Article V, Section 13 and had erred in addressing the merits of each appellant's argument that the presence of the alternate juror during deliberations violated Article 36.22).

Adway contends that there is "no presumption" of "no prejudicial effect" and that "[t]he proper course in such a circumstance is a thorough, investigative, curative questioning of the valid jurors by the Court, on-the-record with counsel present, as to the influence, if any, on the individual juror's decisions due to the presence of the alternate." He concludes that his mistrial motion should not have been denied without such an inquiry.

We hold that Adway has failed to make any showing of how he was prejudiced by the presence of the alternate juror. The argument he does make—that the circuit court should have thoroughly questioned the "valid" jurors—was not made to the circuit court, even though defense counsel had the opportunity to make that request before the jury was

---

[2]Adway failed to provide a full citation to this case, either in his argument or in his table of authorities. He provided only the name of the case, the court that decided it, and the date of the decision. Complete citations are more helpful.

excused. Any request for corrective action is untimely if not made at the first opportunity, *Lytle v. State*, 91 Ark. App. 243, 209 S.W.3d 421 (2005), and the appellate court will not address an argument made for the first time on appeal. *Davis v. State*, 2018 Ark. App. 450, 558 S.W.3d 897.

Affirmed.

KLAPPENBACH and SWITZER, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.